**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Before this Court are several post-trial motions. Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.


**Facts**

        A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery. The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment. The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment. The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment. The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment.  Defendants now bring post-trial motions for judgment of acquittal or new trial.

**Legal Standard**

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979).  The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt. *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).

**Analysis**

**I. "Personal Gain" Jury Instruction for Honest Services Fraud**

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person.  This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate.  There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office.  149 F.3d 654-57. There is no question that personal gain is an important element of §1346.  In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id*. In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.

## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official.  We have dealt with this issue extensively prior to trial, and see no

reason to deviate from our previous decision. See *United States v. Sorich*, 427 F. Supp. 2d 820,

831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because,

among other reasons, they are one source of the Defendants' fiduciary duties.  The indictment

offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago

Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois

constitution, and the *Shakman* Decrees."  *Id*.  We find now, as we did then, that the *Shakman*

Decrees are an appropriate basis for evaluating honest service fraud.  Defendants claim that the

"City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree

protects registered voters.  Because the *Shakman* Decree is not the only basis of fraud, the fact

that the "people of Chicago" may be a broader than "registered voters" does not bar the

consideration of the *Shakman* Decree as one of many sources of consideration.  There are, after

all, a significant portion of the "people of Chicago" who are registered voters, and valid

"victims" even according to Sorich.  If the *Shakman* Decree were the only source of law,

questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations,

citing a Fifth Circuit case in support.  However, the Seventh Circuit has held otherwise.  In

*United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not

required to be grounded solely in state law.  195 F.3d 961 (7th Cir. 1999).  Federal statutes may

be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes.

*Id*.  There is also a strong grounding in this case in state law and state statutes.  The *Shakman*

Decree is but one of several bases for fiduciary duty. As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute. State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services. This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation. The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud. Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes. See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree. This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes. The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud. As such, the jury instructions were properly given.

## III. Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled. The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement. The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995). The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality. These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

## IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent." Different circuits have come out differently on this issue. However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341.  427 F.Supp. 2d at 827-28.  We find no reason to rehash all the arguments and reasonings again.  In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent".  *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990).  The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006).  In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees.  The City has authorized individuals to spend its money to hire and promote workers on a merit basis.  When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest.  In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.


## V. Amendment of the Indictment at Trial

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

## VI. Elements of Mail Fraud

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received.  In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme.  489 U.S. 705 (U.S. 1989).  This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme."  The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient.  These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme.  Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring. Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

**VIII. Unfair Advantage from Permitting Second Superseding Indictment**

McCarthy reargues its pre-trial motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial. This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two. The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

**IX. Computer Deletion Evidence**

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial. This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997. That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in the charged scheme to defraud. It cannot be used by you as evidence against Defendant John Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against unfair prejudice.

## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that because Sullivan did not testify, and there was no opportunity for cross-examination, testimony beyond Sullivan's false statements should have been barred.  McCarthy argues that because they were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471 U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004).  Further, because the statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if the statement is in the course and in furtherance of the conspiracy.  Fed. R. of Evid. 801(E), *United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006).  In the present case, Sullivan was a co-conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy. This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation Clause.

**XI.  Union Instruction**

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process.  As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud.  This is simply not the case. This court rejected Defendant's instructions #28, since the authorities cited did not support their contention.  Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account.  *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005).  The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail.  The question was not whether union officials participated in hiring.  The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited.  This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.

**XII. Sullivan's Motion for Acquittal for Count Eight**

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements.  Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization. Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization. Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding. A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly. Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization. This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false. Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms." Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence. Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan. Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the organization with Katalinic.  A list tracking hires for one of the mass hire sequence, including selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence presented above is viewed in a light most favorable to the government, a reasonable jury could find knowing and willful falsity beyond a reasonable doubt.  The evidence, when taken as a whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization. The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of Agent Hauser constituted a constructive amendment of the indictment. In support of this contention, Sullivan asserts that there is variation between the language of the indictment concerning Sullivan's words and the testimony of Agent Hauser.  Specifically, the difference between "did not have knowledge about" and "have never heard of", and "who the members" and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony.  *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989); *United States v. Ras*, 713 F.2d 311 (7th Cir. 1983).  The fact that an FBI agent's testimony about the statements varies from the language in the indictment does not amend the indictment.  *United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to." *Id*.

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were." These statements are not "fundamentally ambiguous" and do not command an acquittal. Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment. There is no ambiguity as to his meaning, even if the question may have been interpreted differently. *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements. The jury's verdict stands. The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true. This is simply not the case. Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true." The government has also presented evidence for why they were

false.  The question of fact is one left for jury determination.  The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.


**XIII.  Sullivan's Motion to Strike**

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I.  As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.


**XIV. Jury Instructions for Sullivan**

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A).  This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B).  This court refused this paragraph because it does not go to the issue in question.  The government does not allege that Sullivan's statements were literally true, but unresponsive.  The government claims that Sullivan's statements were false.  The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4.  As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994).   That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5. For the same reasons as No. 4, this instruction was also refused. This court has no reason to change the decision. The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood." Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7. For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7. It is not an accurate statement of the law in this forum.


**XV. Slattery's Motion for Judgment of Acquittal**

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud. This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict. At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference. *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt. Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise. There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.

**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires." Rule 33 motions are not favored and are granted in only the most extreme cases. *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied. The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

**Conclusion**

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.

Enter:

/s/David H. Coar

_____

David H. Coar
United States District Judge

Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before this Court are several post-trial motions. Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.

### <u>Facts</u>

A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery. The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment. The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment. The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment. The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment.  Defendants now bring post-trial motions for judgment of acquittal or new trial.

## Legal Standard

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979).  The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt. *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).

## Analysis

### I. "Personal Gain" Jury Instruction for Honest Services Fraud

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person.  This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate.  There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office.  149 F.3d 654-57. There is no question that personal gain is an important element of §1346.  In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id.* In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.


## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official. We have dealt with this issue extensively prior to trial, and see no

reason to deviate from our previous decision. See *United States v. Sorich*, 427 F. Supp. 2d 820,

831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because,

among other reasons, they are one source of the Defendants' fiduciary duties. The indictment

offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago

Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois

constitution, and the *Shakman* Decrees." *Id*. We find now, as we did then, that the *Shakman*

Decrees are an appropriate basis for evaluating honest service fraud. Defendants claim that the

"City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree

protects registered voters. Because the *Shakman* Decree is not the only basis of fraud, the fact

that the "people of Chicago" may be a broader than "registered voters" does not bar the

consideration of the *Shakman* Decree as one of many sources of consideration. There are, after

all, a significant portion of the "people of Chicago" who are registered voters, and valid

"victims" even according to Sorich. If the *Shakman* Decree were the only source of law,

questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations,

citing a Fifth Circuit case in support. However, the Seventh Circuit has held otherwise. In

*United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not

required to be grounded solely in state law. 195 F.3d 961 (7th Cir. 1999). Federal statutes may

be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes.

*Id*. There is also a strong grounding in this case in state law and state statutes. The *Shakman*

Decree is but one of several bases for fiduciary duty. As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute. State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services. This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation. The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud. Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes. See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree. This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes.  The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud.  As such, the jury instructions were properly given.


## III.  Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled.  The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement.  The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995).  The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality.  These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.


## IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent."  Different circuits have come out differently on this issue.  However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341. 427 F.Supp. 2d at 827-28. We find no reason to rehash all the arguments and reasonings again. In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent". *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990). The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006). In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees. The City has authorized individuals to spend its money to hire and promote workers on a merit basis. When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest. In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.


**V. Amendment of the Indictment at Trial**

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

**VI. Elements of Mail Fraud**

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received.  In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme.  489 U.S. 705 (U.S. 1989).  This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme."  The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient.  These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme.  Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring. Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

## VIII. Unfair Advantage from Permitting Second Superseding Indictment

McCarthy reargues its pre-trial motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial. This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two. The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

## IX. Computer Deletion Evidence

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial. This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997. That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in the charged scheme to defraud. It cannot be used by you as evidence against Defendant John Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against unfair prejudice.

## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that because Sullivan did not testify, and there was no opportunity for cross-examination, testimony beyond Sullivan's false statements should have been barred. McCarthy argues that because they were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471 U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004). Further, because the statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if the statement is in the course and in furtherance of the conspiracy. Fed. R. of Evid. 801(E), *United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006). In the present case, Sullivan was a co-conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy. This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation Clause.

## XI.  Union Instruction

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process.  As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud.  This is simply not the case.  This court rejected Defendant's instructions #28, since the authorities cited did not support their contention.  Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account.  *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005).  The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail.  The question was not whether union officials participated in hiring.  The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited.  This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.

## XII. Sullivan's Motion for Acquittal for Count Eight

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements.  Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization. Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization. Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding. A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly. Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization. This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false. Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms." Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence. Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan. Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the organization with Katalinic. A list tracking hires for one of the mass hire sequence, including selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence presented above is viewed in a light most favorable to the government, a reasonable jury could find knowing and willful falsity beyond a reasonable doubt. The evidence, when taken as a whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization. The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of Agent Hauser constituted a constructive amendment of the indictment. In support of this contention, Sullivan asserts that there is variation between the language of the indictment concerning Sullivan's words and the testimony of Agent Hauser. Specifically, the difference between "did not have knowledge about" and "have never heard of", and "who the members" and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony. *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989); *United States v. Ras*, 713 F.2d 311 (7th Cir. 1983). The fact that an FBI agent's testimony about the statements varies from the language in the indictment does not amend the indictment. *United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

-15-

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to." *Id.*

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were." These statements are not "fundamentally ambiguous" and do not command an acquittal. Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment. There is no ambiguity as to his meaning, even if the question may have been interpreted differently. *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements. The jury's verdict stands. The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true. This is simply not the case. Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true." The government has also presented evidence for why they were

false.  The question of fact is one left for jury determination.  The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.


**XIII.  Sullivan's Motion to Strike**

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I.  As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.


**XIV. Jury Instructions for Sullivan**

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A).  This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B).  This court refused this paragraph because it does not go to the issue in question.  The government does not allege that Sullivan's statements were literally true, but unresponsive.  The government claims that Sullivan's statements were false.  The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4.  As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994).   That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5.  For the same reasons as No. 4, this instruction was also refused.  This court has no reason to change the decision.  The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood."  Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7.  For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7.  It is not an accurate statement of the law in this forum.

## XV. Slattery's Motion for Judgment of Acquittal

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud.  This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict.  At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference.  *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt.  Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise.  There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.

**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires." Rule 33 motions are not favored and are granted in only the most extreme cases. *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied. The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

**Conclusion**

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.

Enter:

/s/David H. Coar

_____

David H. Coar
United States District Judge

Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court are several post-trial motions. Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.

## Facts

A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery. The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment. The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment. The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment. The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment.  Defendants now bring post-trial motions for judgment of acquittal or new trial.

## Legal Standard

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979).  The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt. *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).

## Analysis

### I. "Personal Gain" Jury Instruction for Honest Services Fraud

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person.  This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate.  There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office.  149 F.3d 654-57. There is no question that personal gain is an important element of §1346.  In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id*. In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.

## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official. We have dealt with this issue extensively prior to trial, and see no

reason to deviate from our previous decision. See *United States v. Sorich*, 427 F. Supp. 2d 820,

831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because,

among other reasons, they are one source of the Defendants' fiduciary duties. The indictment

offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago

Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois

constitution, and the *Shakman* Decrees." *Id*. We find now, as we did then, that the *Shakman*

Decrees are an appropriate basis for evaluating honest service fraud. Defendants claim that the

"City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree

protects registered voters. Because the *Shakman* Decree is not the only basis of fraud, the fact

that the "people of Chicago" may be a broader than "registered voters" does not bar the

consideration of the *Shakman* Decree as one of many sources of consideration. There are, after

all, a significant portion of the "people of Chicago" who are registered voters, and valid

"victims" even according to Sorich. If the *Shakman* Decree were the only source of law,

questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations,

citing a Fifth Circuit case in support. However, the Seventh Circuit has held otherwise. In

*United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not

required to be grounded solely in state law. 195 F.3d 961 (7th Cir. 1999). Federal statutes may

be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes.

*Id*. There is also a strong grounding in this case in state law and state statutes. The *Shakman*

Decree is but one of several bases for fiduciary duty. As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute. State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services. This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation. The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud. Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes. See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree. This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes. The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud. As such, the jury instructions were properly given.

## III. Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled. The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement. The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995). The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality. These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

## IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent." Different circuits have come out differently on this issue. However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341. 427 F.Supp. 2d at 827-28. We find no reason to rehash all the arguments and reasonings again. In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent". *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990). The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006). In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees. The City has authorized individuals to spend its money to hire and promote workers on a merit basis. When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest. In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.


**V. Amendment of the Indictment at Trial**

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

**VI. Elements of Mail Fraud**

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received. In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme. 489 U.S. 705 (U.S. 1989). This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme." The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient. These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme. Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring. Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

## VIII. Unfair Advantage from Permitting Second Superseding Indictment

McCarthy reargues its pre-trial motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial. This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two. The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

## IX. Computer Deletion Evidence

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial. This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997. That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot

be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in

the charged scheme to defraud. It cannot be used by you as evidence against Defendant John

Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against

unfair prejudice.


## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes

testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that

because Sullivan did not testify, and there was no opportunity for cross-examination, testimony

beyond Sullivan's false statements should have been barred.  McCarthy argues that because they

were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to

show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471

U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004).  Further, because the

statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if

the statement is in the course and in furtherance of the conspiracy.  Fed. R. of Evid. 801(E),

*United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006).  In the present case, Sullivan was a co-

conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy.

This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation

Clause.

## XI.  Union Instruction

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process.  As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud.  This is simply not the case.  This court rejected Defendant's instructions #28, since the authorities cited did not support their contention.  Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account.  *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005).  The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail.  The question was not whether union officials participated in hiring.  The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited.  This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.

## XII. Sullivan's Motion for Acquittal for Count Eight

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements.  Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization. Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization. Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding. A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly. Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization. This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false. Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms." Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence. Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan. Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the organization with Katalinic. A list tracking hires for one of the mass hire sequence, including selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence presented above is viewed in a light most favorable to the government, a reasonable jury could find knowing and willful falsity beyond a reasonable doubt. The evidence, when taken as a whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization. The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of Agent Hauser constituted a constructive amendment of the indictment. In support of this contention, Sullivan asserts that there is variation between the language of the indictment concerning Sullivan's words and the testimony of Agent Hauser. Specifically, the difference between "did not have knowledge about" and "have never heard of", and "who the members" and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony. *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989); *United States v. Ras*, 713 F.2d 311 (7th Cir. 1983). The fact that an FBI agent's testimony about the statements varies from the language in the indictment does not amend the indictment. *United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to." *Id*.

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were." These statements are not "fundamentally ambiguous" and do not command an acquittal. Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment. There is no ambiguity as to his meaning, even if the question may have been interpreted differently. *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements. The jury's verdict stands. The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true. This is simply not the case. Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true." The government has also presented evidence for why they were

false.  The question of fact is one left for jury determination.  The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.

**XIII.  Sullivan's Motion to Strike**

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I.  As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.

**XIV. Jury Instructions for Sullivan**

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A).  This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B).  This court refused this paragraph because it does not go to the issue in question.  The government does not allege that Sullivan's statements were literally true, but unresponsive.  The government claims that Sullivan's statements were false.  The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4.  As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994).   That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5. For the same reasons as No. 4, this instruction was also refused. This court has no reason to change the decision. The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood." Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7. For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7. It is not an accurate statement of the law in this forum.

## XV. Slattery's Motion for Judgment of Acquittal

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud. This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict. At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference. *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt. Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise. There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.

**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires." Rule 33 motions are not favored and are granted in only the most extreme cases. *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied. The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

## Conclusion

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.

Enter:

/s/David H. Coar

_____

David H. Coar
United States District Judge

Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.  05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court are several post-trial motions.  Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.


**Facts**

A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery.  The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment.  The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment.  The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment.  The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment. Defendants now bring post-trial motions for judgment of acquittal or new trial.

## Legal Standard

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979). The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt. *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).

## Analysis

### I. "Personal Gain" Jury Instruction for Honest Services Fraud

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person. This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate. There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office. 149 F.3d 654-57. There is no question that personal gain is an important element of §1346. In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id*. In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.


## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official.  We have dealt with this issue extensively prior to trial, and see no

reason to deviate from our previous decision. See *United States v. Sorich*, 427 F. Supp. 2d 820,

831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because,

among other reasons, they are one source of the Defendants' fiduciary duties.  The indictment

offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago

Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois

constitution, and the *Shakman* Decrees."  *Id*.  We find now, as we did then, that the *Shakman*

Decrees are an appropriate basis for evaluating honest service fraud.  Defendants claim that the

"City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree

protects registered voters.  Because the *Shakman* Decree is not the only basis of fraud, the fact

that the "people of Chicago" may be a broader than "registered voters" does not bar the

consideration of the *Shakman* Decree as one of many sources of consideration.  There are, after

all, a significant portion of the "people of Chicago" who are registered voters, and valid

"victims" even according to Sorich.  If the *Shakman* Decree were the only source of law,

questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations,

citing a Fifth Circuit case in support.  However, the Seventh Circuit has held otherwise.  In

*United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not

required to be grounded solely in state law.  195 F.3d 961 (7th Cir. 1999).  Federal statutes may

be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes.

*Id*.  There is also a strong grounding in this case in state law and state statutes.  The *Shakman*

Decree is but one of several bases for fiduciary duty. As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute. State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services. This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation. The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud. Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes. See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree. This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes. The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud. As such, the jury instructions were properly given.

## III.  Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled. The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement. The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995). The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality. These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

## IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent." Different circuits have come out differently on this issue. However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341. 427 F.Supp. 2d at 827-28. We find no reason to rehash all the arguments and reasonings again. In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent". *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990). The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006). In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees. The City has authorized individuals to spend its money to hire and promote workers on a merit basis. When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest. In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.


**V. Amendment of the Indictment at Trial**

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

**VI. Elements of Mail Fraud**

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received.  In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme.  489 U.S. 705 (U.S. 1989).  This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme."  The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient.  These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme.  Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring. Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

## VIII. Unfair Advantage from Permitting Second Superseding Indictment

McCarthy reargues its pre-trial motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial. This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two. The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

## IX. Computer Deletion Evidence

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial. This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997. That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot

be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in

the charged scheme to defraud. It cannot be used by you as evidence against Defendant John

Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against

unfair prejudice.


## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes

testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that

because Sullivan did not testify, and there was no opportunity for cross-examination, testimony

beyond Sullivan's false statements should have been barred.  McCarthy argues that because they

were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to

show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471

U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004).  Further, because the

statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if

the statement is in the course and in furtherance of the conspiracy.  Fed. R. of Evid. 801(E),

*United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006).  In the present case, Sullivan was a co-

conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy.

This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation

Clause.

## XI.  Union Instruction

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process.  As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud.  This is simply not the case. This court rejected Defendant's instructions #28, since the authorities cited did not support their contention.  Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account.  *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005).  The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail.  The question was not whether union officials participated in hiring.  The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited.  This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.

## XII. Sullivan's Motion for Acquittal for Count Eight

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements.  Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization. Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization. Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding. A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly. Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization. This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false. Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms." Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence. Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan. Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the organization with Katalinic.  A list tracking hires for one of the mass hire sequence, including selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence presented above is viewed in a light most favorable to the government, a reasonable jury could find knowing and willful falsity beyond a reasonable doubt.  The evidence, when taken as a whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization. The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of Agent Hauser constituted a constructive amendment of the indictment. In support of this contention, Sullivan asserts that there is variation between the language of the indictment concerning Sullivan's words and the testimony of Agent Hauser.  Specifically, the difference between "did not have knowledge about" and "have never heard of", and "who the members" and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony.  *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989); *United States v. Ras*, 713 F.2d 311 (7th Cir. 1983).  The fact that an FBI agent's testimony about the statements varies from the language in the indictment does not amend the indictment.  *United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to." *Id*.

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were." These statements are not "fundamentally ambiguous" and do not command an acquittal. Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment. There is no ambiguity as to his meaning, even if the question may have been interpreted differently. *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements. The jury's verdict stands. The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true. This is simply not the case. Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true." The government has also presented evidence for why they were

false.  The question of fact is one left for jury determination.  The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.

## XIII.  Sullivan's Motion to Strike

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I.  As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.

## XIV. Jury Instructions for Sullivan

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A).  This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B).  This court refused this paragraph because it does not go to the issue in question.  The government does not allege that Sullivan's statements were literally true, but unresponsive.  The government claims that Sullivan's statements were false.  The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4.  As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994).   That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5.  For the same reasons as No. 4, this instruction was also refused.  This court has no reason to change the decision.  The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood."  Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7.  For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7.  It is not an accurate statement of the law in this forum.


**XV. Slattery's Motion for Judgment of Acquittal**

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud.  This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict.  At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference.  *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt.  Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise.  There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.

**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires." Rule 33 motions are not favored and are granted in only the most extreme cases. *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied. The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

## Conclusion

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.


Enter:


/s/David H. Coar
_____

David H. Coar
United States District Judge


Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court are several post-trial motions. Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.


## Facts

A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery. The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment. The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment. The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment. The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment.  Defendants now bring post-trial motions for judgment of acquittal or new trial.

**Legal Standard**

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307 (1979).  The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt.  *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).

**Analysis**

**I. "Personal Gain" Jury Instruction for Honest Services Fraud**

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person.  This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate.  There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office.  149 F.3d 654-57. There is no question that personal gain is an important element of §1346.  In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id*. In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.

## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official. We have dealt with this issue extensively prior to trial, and see no reason to deviate from our previous decision. See *United States v. Sorich*, 427 F. Supp. 2d 820, 831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because, among other reasons, they are one source of the Defendants' fiduciary duties. The indictment offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois constitution, and the *Shakman* Decrees." *Id*. We find now, as we did then, that the *Shakman* Decrees are an appropriate basis for evaluating honest service fraud. Defendants claim that the "City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree protects registered voters. Because the *Shakman* Decree is not the only basis of fraud, the fact that the "people of Chicago" may be a broader than "registered voters" does not bar the consideration of the *Shakman* Decree as one of many sources of consideration. There are, after all, a significant portion of the "people of Chicago" who are registered voters, and valid "victims" even according to Sorich. If the *Shakman* Decree were the only source of law, questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations, citing a Fifth Circuit case in support. However, the Seventh Circuit has held otherwise. In *United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not required to be grounded solely in state law. 195 F.3d 961 (7th Cir. 1999). Federal statutes may be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes. *Id*. There is also a strong grounding in this case in state law and state statutes. The *Shakman*

Decree is but one of several bases for fiduciary duty. As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute. State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services. This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation. The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud. Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes. See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree. This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes. The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud. As such, the jury instructions were properly given.

## III. Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled. The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement. The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995). The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality. These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

## IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent." Different circuits have come out differently on this issue. However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341. 427 F.Supp. 2d at 827-28. We find no reason to rehash all the arguments and reasonings again. In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent". *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990). The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006). In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees. The City has authorized individuals to spend its money to hire and promote workers on a merit basis. When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest. In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.

## V. Amendment of the Indictment at Trial

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

## VI. Elements of Mail Fraud

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received.  In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme.  489 U.S. 705 (U.S. 1989).  This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme."  The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient.  These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme.  Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring. Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

## VIII. Unfair Advantage from Permitting Second Superseding Indictment

McCarthy reargues its pre-trail motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial. This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two. The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

## IX. Computer Deletion Evidence

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial. This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997. That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot

be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in

the charged scheme to defraud. It cannot be used by you as evidence against Defendant John

Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against

unfair prejudice.


## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes

testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that

because Sullivan did not testify, and there was no opportunity for cross-examination, testimony

beyond Sullivan's false statements should have been barred.  McCarthy argues that because they

were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to

show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471

U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004).  Further, because the

statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if

the statement is in the course and in furtherance of the conspiracy.  Fed. R. of Evid. 801(E),

*United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006).  In the present case, Sullivan was a co-

conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy.

This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation

Clause.

## XI. Union Instruction

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process. As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud. This is simply not the case. This court rejected Defendant's instructions #28, since the authorities cited did not support their contention. Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account. *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005). The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail. The question was not whether union officials participated in hiring. The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited. This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.

## XII. Sullivan's Motion for Acquittal for Count Eight

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements. Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization. Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization. Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding. A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly. Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization. This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false. Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms." Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence. Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan. Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the organization with Katalinic. A list tracking hires for one of the mass hire sequence, including selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence presented above is viewed in a light most favorable to the government, a reasonable jury could find knowing and willful falsity beyond a reasonable doubt. The evidence, when taken as a whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization. The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of Agent Hauser constituted a constructive amendment of the indictment. In support of this contention, Sullivan asserts that there is variation between the language of the indictment concerning Sullivan's words and the testimony of Agent Hauser. Specifically, the difference between "did not have knowledge about" and "have never heard of", and "who the members" and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony. *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989); *United States v. Ras*, 713 F.2d 311 (7th Cir. 1983). The fact that an FBI agent's testimony about the statements varies from the language in the indictment does not amend the indictment. *United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to." *Id.*

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were." These statements are not "fundamentally ambiguous" and do not command an acquittal. Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment. There is no ambiguity as to his meaning, even if the question may have been interpreted differently. *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements. The jury's verdict stands. The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true. This is simply not the case. Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true." The government has also presented evidence for why they were

false.  The question of fact is one left for jury determination.  The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.

## XIII.  Sullivan's Motion to Strike

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I.  As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.

## XIV. Jury Instructions for Sullivan

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A).  This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B).  This court refused this paragraph because it does not go to the issue in question.  The government does not allege that Sullivan's statements were literally true, but unresponsive.  The government claims that Sullivan's statements were false.  The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4.  As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994).   That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v.*
*Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5.  For the
same reasons as No. 4, this instruction was also refused.  This court has no reason to change the
decision.  The jury was instructed, regarding ambiguity, that "the context of the question and
answer is often of critical importance if it is claimed that the question was ambiguous or
misunderstood."  Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7.  For
the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7.
It is not an accurate statement of the law in this forum.


**XV. Slattery's Motion for Judgment of Acquittal**

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there
was insufficient evidence to establish Slattery's knowledge and intent to defraud.  This court will
only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily
against the verdict.  At the same time, this court is well aware that a conviction cannot rest on
mere speculation or conjecture, or inference upon inference.  *United States v. Moore,* 115 F.3d
1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a
reasonable doubt.  Although Slattery continues to present arguments for why the evidence
suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable
lead a rational jury to conclude otherwise.  There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.

**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires."  Rule 33 motions are not favored and are granted in only the most extreme cases.  *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998).  New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights."  *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993).  For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied.  The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

## Conclusion

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.

Enter:

/s/David H. Coar

_____

David H. Coar
United States District Judge

Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.  05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court are several post-trial motions.  Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.


## Facts

A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery.  The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment.  The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment.  The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment.  The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment.  Defendants now bring post-trial motions for judgment of acquittal or new trial.

**Legal Standard**

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979).  The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt. *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).

**Analysis**

**I. "Personal Gain" Jury Instruction for Honest Services Fraud**

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person.  This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate.  There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office.  149 F.3d 654-57. There is no question that personal gain is an important element of §1346.  In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id.* In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.

## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official. We have dealt with this issue extensively prior to trial, and see no reason to deviate from our previous decision. See *United States v. Sorich*, 427 F. Supp. 2d 820, 831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because, among other reasons, they are one source of the Defendants' fiduciary duties. The indictment offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois constitution, and the *Shakman* Decrees." *Id*. We find now, as we did then, that the *Shakman* Decrees are an appropriate basis for evaluating honest service fraud. Defendants claim that the "City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree protects registered voters. Because the *Shakman* Decree is not the only basis of fraud, the fact that the "people of Chicago" may be a broader than "registered voters" does not bar the consideration of the *Shakman* Decree as one of many sources of consideration. There are, after all, a significant portion of the "people of Chicago" who are registered voters, and valid "victims" even according to Sorich. If the *Shakman* Decree were the only source of law, questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations, citing a Fifth Circuit case in support. However, the Seventh Circuit has held otherwise. In *United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not required to be grounded solely in state law. 195 F.3d 961 (7th Cir. 1999). Federal statutes may be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes. *Id*. There is also a strong grounding in this case in state law and state statutes. The *Shakman*

Decree is but one of several bases for fiduciary duty. As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute. State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services. This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation. The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud. Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes. See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree. This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes. The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud. As such, the jury instructions were properly given.

### III.  Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled. The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement. The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995). The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality. These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

### IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent." Different circuits have come out differently on this issue. However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341. 427 F.Supp. 2d at 827-28. We find no reason to rehash all the arguments and reasonings again. In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent". *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990). The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006). In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees. The City has authorized individuals to spend its money to hire and promote workers on a merit basis. When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest. In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.


**V. Amendment of the Indictment at Trial**

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

**VI. Elements of Mail Fraud**

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received.  In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme.  489 U.S. 705 (U.S. 1989).  This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme."  The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient.  These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme.  McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme.  Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring.  Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

## VIII. Unfair Advantage from Permitting Second Superseding Indictment

McCarthy reargues its pre-trial motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial.  This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two.  The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

## IX. Computer Deletion Evidence

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial.  This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997.  That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in the charged scheme to defraud. It cannot be used by you as evidence against Defendant John Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against unfair prejudice.

## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that because Sullivan did not testify, and there was no opportunity for cross-examination, testimony beyond Sullivan's false statements should have been barred. McCarthy argues that because they were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471 U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004). Further, because the statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if the statement is in the course and in furtherance of the conspiracy. Fed. R. of Evid. 801(E), *United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006). In the present case, Sullivan was a co-conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy. This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation Clause.

## XI.  Union Instruction

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process.  As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud.  This is simply not the case.  This court rejected Defendant's instructions #28, since the authorities cited did not support their contention.  Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account.  *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005).  The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail.  The question was not whether union officials participated in hiring.  The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited.  This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.

## XII. Sullivan's Motion for Acquittal for Count Eight

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements.  Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization. Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization. Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding. A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly. Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization. This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false. Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms." Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence. Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan. Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the organization with Katalinic. A list tracking hires for one of the mass hire sequence, including selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence presented above is viewed in a light most favorable to the government, a reasonable jury could find knowing and willful falsity beyond a reasonable doubt. The evidence, when taken as a whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization. The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of Agent Hauser constituted a constructive amendment of the indictment. In support of this contention, Sullivan asserts that there is variation between the language of the indictment concerning Sullivan's words and the testimony of Agent Hauser. Specifically, the difference between "did not have knowledge about" and "have never heard of", and "who the members" and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony. *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989); *United States v. Ras*, 713 F.2d 311 (7th Cir. 1983). The fact that an FBI agent's testimony about the statements varies from the language in the indictment does not amend the indictment. *United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to." *Id*.

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were." These statements are not "fundamentally ambiguous" and do not command an acquittal. Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment. There is no ambiguity as to his meaning, even if the question may have been interpreted differently. *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements. The jury's verdict stands. The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true. This is simply not the case. Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true." The government has also presented evidence for why they were

false.  The question of fact is one left for jury determination.  The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.


**XIII.  Sullivan's Motion to Strike**

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I.  As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.


**XIV. Jury Instructions for Sullivan**

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A).  This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B).  This court refused this paragraph because it does not go to the issue in question.  The government does not allege that Sullivan's statements were literally true, but unresponsive.  The government claims that Sullivan's statements were false.  The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4.  As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994).   That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5.  For the same reasons as No. 4, this instruction was also refused.  This court has no reason to change the decision.  The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood."  Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7.  For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7.  It is not an accurate statement of the law in this forum.


**XV. Slattery's Motion for Judgment of Acquittal**

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud.  This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict.  At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference.  *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt.  Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise.  There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence.  These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent.  However, the lack of direct evidence does not mean the facts are automatically "speculation."  When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding.  Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference.  The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself."  *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004).  Thus, judgment of acquittal is denied.

**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires."  Rule 33 motions are not favored and are granted in only the most extreme cases.  *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998).  New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights."  *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993).  For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied.  The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

## Conclusion

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.


Enter:


/s/David H. Coar

_____

David H. Coar
United States District Judge


Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.  05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court are several post-trial motions.  Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.


## Facts

  A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery.  The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment.  The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment.  The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment.  The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment.  Defendants now bring post-trial motions for judgment of acquittal or new trial.

**Legal Standard**

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979).  The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt. *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).

**Analysis**

**I. "Personal Gain" Jury Instruction for Honest Services Fraud**

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person.  This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate.  There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office.  149 F.3d 654-57. There is no question that personal gain is an important element of §1346.  In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id.* In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.

## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official. We have dealt with this issue extensively prior to trial, and see no reason to deviate from our previous decision. See *United States v. Sorich*, 427 F. Supp. 2d 820, 831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because, among other reasons, they are one source of the Defendants' fiduciary duties. The indictment offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois constitution, and the *Shakman* Decrees." *Id*. We find now, as we did then, that the *Shakman* Decrees are an appropriate basis for evaluating honest service fraud. Defendants claim that the "City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree protects registered voters. Because the *Shakman* Decree is not the only basis of fraud, the fact that the "people of Chicago" may be a broader than "registered voters" does not bar the consideration of the *Shakman* Decree as one of many sources of consideration. There are, after all, a significant portion of the "people of Chicago" who are registered voters, and valid "victims" even according to Sorich. If the *Shakman* Decree were the only source of law, questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations, citing a Fifth Circuit case in support. However, the Seventh Circuit has held otherwise. In *United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not required to be grounded solely in state law. 195 F.3d 961 (7th Cir. 1999). Federal statutes may be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes. *Id*. There is also a strong grounding in this case in state law and state statutes. The *Shakman*

Decree is but one of several bases for fiduciary duty. As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute. State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services. This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation. The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud. Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes. See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree. This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes. The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud. As such, the jury instructions were properly given.

## III. Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled. The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement. The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995). The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality. These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

## IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent." Different circuits have come out differently on this issue. However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341. 427 F.Supp. 2d at 827-28. We find no reason to rehash all the arguments and reasonings again. In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent". *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990). The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006). In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees. The City has authorized individuals to spend its money to hire and promote workers on a merit basis. When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest. In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.

**V. Amendment of the Indictment at Trial**

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

## VI. Elements of Mail Fraud

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received. In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme. 489 U.S. 705 (U.S. 1989). This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme." The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient. These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme. Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring. Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

## VIII. Unfair Advantage from Permitting Second Superseding Indictment

McCarthy reargues its pre-trial motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial. This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two. The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

## IX. Computer Deletion Evidence

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial. This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997. That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in the charged scheme to defraud. It cannot be used by you as evidence against Defendant John Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against unfair prejudice.

## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that because Sullivan did not testify, and there was no opportunity for cross-examination, testimony beyond Sullivan's false statements should have been barred. McCarthy argues that because they were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471 U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004). Further, because the statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if the statement is in the course and in furtherance of the conspiracy. Fed. R. of Evid. 801(E), *United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006). In the present case, Sullivan was a co-conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy. This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation Clause.

**XI.  Union Instruction**

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process.  As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud.  This is simply not the case.  This court rejected Defendant's instructions #28, since the authorities cited did not support their contention.  Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account.  *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005).  The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail.  The question was not whether union officials participated in hiring.  The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited.  This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.


**XII. Sullivan's Motion for Acquittal for Count Eight**

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements.  Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization. Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization. Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding. A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly. Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization. This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false. Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms." Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence. Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan. Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the organization with Katalinic. A list tracking hires for one of the mass hire sequence, including selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence presented above is viewed in a light most favorable to the government, a reasonable jury could find knowing and willful falsity beyond a reasonable doubt. The evidence, when taken as a whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization. The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of Agent Hauser constituted a constructive amendment of the indictment. In support of this contention, Sullivan asserts that there is variation between the language of the indictment concerning Sullivan's words and the testimony of Agent Hauser. Specifically, the difference between "did not have knowledge about" and "have never heard of", and "who the members" and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony. *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989); *United States v. Ras*, 713 F.2d 311 (7th Cir. 1983). The fact that an FBI agent's testimony about the statements varies from the language in the indictment does not amend the indictment. *United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to." *Id*.

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were." These statements are not "fundamentally ambiguous" and do not command an acquittal. Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment. There is no ambiguity as to his meaning, even if the question may have been interpreted differently. *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements. The jury's verdict stands. The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true. This is simply not the case. Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true." The government has also presented evidence for why they were

false.  The question of fact is one left for jury determination.  The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.

## XIII.  Sullivan's Motion to Strike

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I.  As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.

## XIV. Jury Instructions for Sullivan

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A).  This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B).  This court refused this paragraph because it does not go to the issue in question.  The government does not allege that Sullivan's statements were literally true, but unresponsive.  The government claims that Sullivan's statements were false.  The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4.  As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994).   That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5. For the same reasons as No. 4, this instruction was also refused. This court has no reason to change the decision. The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood." Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7. For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7. It is not an accurate statement of the law in this forum.


**XV. Slattery's Motion for Judgment of Acquittal**

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud. This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict. At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference. *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt. Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise. There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.

## XVI. New Trial

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires." Rule 33 motions are not favored and are granted in only the most extreme cases. *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied. The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

**Conclusion**

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.

Enter:

/s/David H. Coar

_____

David H. Coar
United States District Judge

Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.  05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court are several post-trial motions.  Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.


## Facts

A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery.  The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment.  The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment.  The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment.  The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment.  Defendants now bring post-trial motions for judgment of acquittal or new trial.


**Legal Standard**

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307 (1979).  The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt. *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).


**Analysis**

**I. "Personal Gain" Jury Instruction for Honest Services Fraud**

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person.  This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate.  There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office.  149 F.3d 654-57. There is no question that personal gain is an important element of §1346.  In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id*. In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.

## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official. We have dealt with this issue extensively prior to trial, and see no

reason to deviate from our previous decision. See *United States v. Sorich*, 427 F. Supp. 2d 820,

831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because,

among other reasons, they are one source of the Defendants' fiduciary duties. The indictment

offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago

Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois

constitution, and the *Shakman* Decrees." *Id*. We find now, as we did then, that the *Shakman*

Decrees are an appropriate basis for evaluating honest service fraud. Defendants claim that the

"City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree

protects registered voters. Because the *Shakman* Decree is not the only basis of fraud, the fact

that the "people of Chicago" may be a broader than "registered voters" does not bar the

consideration of the *Shakman* Decree as one of many sources of consideration. There are, after

all, a significant portion of the "people of Chicago" who are registered voters, and valid

"victims" even according to Sorich. If the *Shakman* Decree were the only source of law,

questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations,

citing a Fifth Circuit case in support. However, the Seventh Circuit has held otherwise. In

*United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not

required to be grounded solely in state law. 195 F.3d 961 (7th Cir. 1999). Federal statutes may

be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes.

*Id*. There is also a strong grounding in this case in state law and state statutes. The *Shakman*

Decree is but one of several bases for fiduciary duty. As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute. State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services. This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation. The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud. Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes. See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree. This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes. The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud. As such, the jury instructions were properly given.

## III. Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled. The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement. The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995). The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality. These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

## IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent." Different circuits have come out differently on this issue. However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341. 427 F.Supp. 2d at 827-28. We find no reason to rehash all the arguments and reasonings again. In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent". *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990). The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006). In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees. The City has authorized individuals to spend its money to hire and promote workers on a merit basis. When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest. In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.


**V. Amendment of the Indictment at Trial**

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

**VI. Elements of Mail Fraud**

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received.  In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme.  489 U.S. 705 (U.S. 1989).  This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme."  The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient.  These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme.  Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring. Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

**VIII. Unfair Advantage from Permitting Second Superseding Indictment**

McCarthy reargues its pre-trial motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial. This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two. The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

**IX. Computer Deletion Evidence**

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial. This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997. That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot

be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in

the charged scheme to defraud. It cannot be used by you as evidence against Defendant John

Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against

unfair prejudice.


**X. Hearsay by Sullivan**

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes

testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that

because Sullivan did not testify, and there was no opportunity for cross-examination, testimony

beyond Sullivan's false statements should have been barred.  McCarthy argues that because they

were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to

show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471

U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004).  Further, because the

statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if

the statement is in the course and in furtherance of the conspiracy.  Fed. R. of Evid. 801(E),

*United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006).  In the present case, Sullivan was a co-

conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy.

This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation

Clause.

**XI. Union Instruction**

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process. As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud. This is simply not the case. This court rejected Defendant's instructions #28, since the authorities cited did not support their contention. Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account. *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005). The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail. The question was not whether union officials participated in hiring. The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited. This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.

**XII. Sullivan's Motion for Acquittal for Count Eight**

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements. Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization. Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization. Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding. A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly. Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization. This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false. Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms." Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence. Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan. Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the organization with Katalinic.  A list tracking hires for one of the mass hire sequence, including selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence presented above is viewed in a light most favorable to the government, a reasonable jury could find knowing and willful falsity beyond a reasonable doubt.  The evidence, when taken as a whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization. The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of Agent Hauser constituted a constructive amendment of the indictment. In support of this contention, Sullivan asserts that there is variation between the language of the indictment concerning Sullivan's words and the testimony of Agent Hauser.  Specifically, the difference between "did not have knowledge about" and "have never heard of", and "who the members" and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony.  *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989); *United States v. Ras*, 713 F.2d 311 (7th Cir. 1983).  The fact that an FBI agent's testimony about the statements varies from the language in the indictment does not amend the indictment.  *United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to." *Id.*

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were." These statements are not "fundamentally ambiguous" and do not command an acquittal. Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment. There is no ambiguity as to his meaning, even if the question may have been interpreted differently. *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements. The jury's verdict stands. The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true. This is simply not the case. Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true." The government has also presented evidence for why they were

false.  The question of fact is one left for jury determination.  The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.

## XIII.  Sullivan's Motion to Strike

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I.  As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.

## XIV. Jury Instructions for Sullivan

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A).  This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B).  This court refused this paragraph because it does not go to the issue in question.  The government does not allege that Sullivan's statements were literally true, but unresponsive.  The government claims that Sullivan's statements were false.  The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4.  As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994).   That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5. For the same reasons as No. 4, this instruction was also refused. This court has no reason to change the decision. The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood." Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7. For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7. It is not an accurate statement of the law in this forum.

## XV. Slattery's Motion for Judgment of Acquittal

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud. This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict. At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference. *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt. Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise. There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.

**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires." Rule 33 motions are not favored and are granted in only the most extreme cases. *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied. The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

**Conclusion**

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.

Enter:

/s/David H. Coar

_____

David H. Coar
United States District Judge

Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court are several post-trial motions. Defendants Robert Sorich, Timothy McCarthy, John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.

**Facts**

A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick Slattery. The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second Superceding Indictment. The jury found McCarthy guilty with respects to Counts 2 and 5 of the Second Superceding Indictment. The jury found Sullivan guilty with respect to Count 8 of the Second Superceding Indictment. The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment.  Defendants now bring post-trial motions for judgment of acquittal or new trial.


## Legal Standard

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979).  The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt. *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).


## Analysis

### I. "Personal Gain" Jury Instruction for Honest Services Fraud

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person.  This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate.  There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office.  149 F.3d 654-57. There is no question that personal gain is an important element of §1346.  In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id*. In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.

## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official. We have dealt with this issue extensively prior to trial, and see no

reason to deviate from our previous decision. See *United States v. Sorich*, 427 F. Supp. 2d 820,

831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because,

among other reasons, they are one source of the Defendants' fiduciary duties. The indictment

offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago

Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois

constitution, and the *Shakman* Decrees." *Id*. We find now, as we did then, that the *Shakman*

Decrees are an appropriate basis for evaluating honest service fraud. Defendants claim that the

"City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree

protects registered voters. Because the *Shakman* Decree is not the only basis of fraud, the fact

that the "people of Chicago" may be a broader than "registered voters" does not bar the

consideration of the *Shakman* Decree as one of many sources of consideration. There are, after

all, a significant portion of the "people of Chicago" who are registered voters, and valid

"victims" even according to Sorich. If the *Shakman* Decree were the only source of law,

questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations,

citing a Fifth Circuit case in support. However, the Seventh Circuit has held otherwise. In

*United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not

required to be grounded solely in state law. 195 F.3d 961 (7th Cir. 1999). Federal statutes may

be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes.

*Id*. There is also a strong grounding in this case in state law and state statutes. The *Shakman*

Decree is but one of several bases for fiduciary duty. As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute. State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services. This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation. The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud. Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes. See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree. This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes. The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud. As such, the jury instructions were properly given.

## III. Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled. The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement. The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995). The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality. These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

## IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent." Different circuits have come out differently on this issue. However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341. 427 F.Supp. 2d at 827-28. We find no reason to rehash all the arguments and reasonings again. In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent". *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990). The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006). In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees. The City has authorized individuals to spend its money to hire and promote workers on a merit basis. When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest. In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.


**V. Amendment of the Indictment at Trial**

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

## VI. Elements of Mail Fraud

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received. In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme. 489 U.S. 705 (U.S. 1989). This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme." The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient. These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme. Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring. Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

## VIII. Unfair Advantage from Permitting Second Superseding Indictment

McCarthy reargues its pre-trial motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial. This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two. The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

## IX. Computer Deletion Evidence

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial. This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997. That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in the charged scheme to defraud. It cannot be used by you as evidence against Defendant John Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against unfair prejudice.

## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that because Sullivan did not testify, and there was no opportunity for cross-examination, testimony beyond Sullivan's false statements should have been barred. McCarthy argues that because they were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471 U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004). Further, because the statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if the statement is in the course and in furtherance of the conspiracy. Fed. R. of Evid. 801(E), *United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006). In the present case, Sullivan was a co-conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy. This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation Clause.

**XI.  Union Instruction**

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process.  As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud.  This is simply not the case.  This court rejected Defendant's instructions #28, since the authorities cited did not support their contention.  Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account.  *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005).  The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail.  The question was not whether union officials participated in hiring.  The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited.  This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.

**XII. Sullivan's Motion for Acquittal for Count Eight**

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements.  Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization.  Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization.  Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding.  A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly.  Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization.  This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false. Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms."  Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence.  Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan.  Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the organization with Katalinic.  A list tracking hires for one of the mass hire sequence, including selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence presented above is viewed in a light most favorable to the government, a reasonable jury could find knowing and willful falsity beyond a reasonable doubt.  The evidence, when taken as a whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization. The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of Agent Hauser constituted a constructive amendment of the indictment. In support of this contention, Sullivan asserts that there is variation between the language of the indictment concerning Sullivan's words and the testimony of Agent Hauser.  Specifically, the difference between "did not have knowledge about" and "have never heard of", and "who the members" and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony.  *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989); *United States v. Ras*, 713 F.2d 311 (7th Cir. 1983).  The fact that an FBI agent's testimony about the statements varies from the language in the indictment does not amend the indictment.  *United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to." *Id*.

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were." These statements are not "fundamentally ambiguous" and do not command an acquittal. Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment. There is no ambiguity as to his meaning, even if the question may have been interpreted differently. *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements. The jury's verdict stands. The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true. This is simply not the case. Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true." The government has also presented evidence for why they were

false.  The question of fact is one left for jury determination.  The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.


**XIII.  Sullivan's Motion to Strike**

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I.  As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.


**XIV. Jury Instructions for Sullivan**

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A).  This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B).  This court refused this paragraph because it does not go to the issue in question.  The government does not allege that Sullivan's statements were literally true, but unresponsive.  The government claims that Sullivan's statements were false.  The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4.  As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994).   That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5. For the same reasons as No. 4, this instruction was also refused. This court has no reason to change the decision. The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood." Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7. For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7. It is not an accurate statement of the law in this forum.

## XV. Slattery's Motion for Judgment of Acquittal

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud. This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict. At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference. *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt. Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise. There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.


**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires."  Rule 33 motions are not favored and are granted in only the most extreme cases.  *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998).  New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights."  *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993).  For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied.  The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

**<u>Conclusion</u>**

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.

Enter:

/s/David H. Coar

_____

David H. Coar
United States District Judge

Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.  05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court are several post-trial motions.  Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.


## Facts

      A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery.  The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment.  The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment.  The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment.  The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment.  Defendants now bring post-trial motions for judgment of acquittal or new trial.


**Legal Standard**

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979).  The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt. *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).


**Analysis**

**I. "Personal Gain" Jury Instruction for Honest Services Fraud**

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person.  This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate.  There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office.  149 F.3d 654-57. There is no question that personal gain is an important element of §1346.  In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id*. In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.

## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official.  We have dealt with this issue extensively prior to trial, and see no

reason to deviate from our previous decision. See *United States v. Sorich*, 427 F. Supp. 2d 820,

831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because,

among other reasons, they are one source of the Defendants' fiduciary duties.  The indictment

offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago

Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois

constitution, and the *Shakman* Decrees."  *Id*.  We find now, as we did then, that the *Shakman*

Decrees are an appropriate basis for evaluating honest service fraud.  Defendants claim that the

"City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree

protects registered voters.  Because the *Shakman* Decree is not the only basis of fraud, the fact

that the "people of Chicago" may be a broader than "registered voters" does not bar the

consideration of the *Shakman* Decree as one of many sources of consideration.  There are, after

all, a significant portion of the "people of Chicago" who are registered voters, and valid

"victims" even according to Sorich.  If the *Shakman* Decree were the only source of law,

questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations,

citing a Fifth Circuit case in support.  However, the Seventh Circuit has held otherwise.  In

*United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not

required to be grounded solely in state law.  195 F.3d 961 (7th Cir. 1999).  Federal statutes may

be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes.

*Id*.  There is also a strong grounding in this case in state law and state statutes.  The *Shakman*

Decree is but one of several bases for fiduciary duty. As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute. State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services. This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation. The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud. Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes. See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree. This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes. The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud. As such, the jury instructions were properly given.

## III. Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled. The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement. The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995). The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality. These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

## IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent." Different circuits have come out differently on this issue. However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341.  427 F.Supp. 2d at 827-28.  We find no reason to rehash all the arguments and reasonings again.  In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent".  *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990).  The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006).  In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees.  The City has authorized individuals to spend its money to hire and promote workers on a merit basis.  When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest.  In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.


**V. Amendment of the Indictment at Trial**

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

**VI. Elements of Mail Fraud**

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received. In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme. 489 U.S. 705 (U.S. 1989). This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme." The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient. These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme. Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring.  Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

## VIII. Unfair Advantage from Permitting Second Superseding Indictment

McCarthy reargues its pre-trail motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial.  This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two.  The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

## IX. Computer Deletion Evidence

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial.  This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997.  That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in the charged scheme to defraud. It cannot be used by you as evidence against Defendant John Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against unfair prejudice.

## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that because Sullivan did not testify, and there was no opportunity for cross-examination, testimony beyond Sullivan's false statements should have been barred. McCarthy argues that because they were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471 U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004). Further, because the statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if the statement is in the course and in furtherance of the conspiracy. Fed. R. of Evid. 801(E), *United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006). In the present case, Sullivan was a co-conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy. This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation Clause.

**XI. Union Instruction**

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process. As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud. This is simply not the case. This court rejected Defendant's instructions #28, since the authorities cited did not support their contention. Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account. *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005). The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail. The question was not whether union officials participated in hiring. The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited. This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.

**XII. Sullivan's Motion for Acquittal for Count Eight**

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements. Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization. Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization. Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding. A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly. Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization. This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false. Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms." Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence. Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan. Pat Foy, a close friend of Sullivan's and a

-13-

member of Katalinic's political organization, testified that he discussed certain members of the organization with Katalinic. A list tracking hires for one of the mass hire sequence, including selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence presented above is viewed in a light most favorable to the government, a reasonable jury could find knowing and willful falsity beyond a reasonable doubt. The evidence, when taken as a whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization. The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of Agent Hauser constituted a constructive amendment of the indictment. In support of this contention, Sullivan asserts that there is variation between the language of the indictment concerning Sullivan's words and the testimony of Agent Hauser. Specifically, the difference between "did not have knowledge about" and "have never heard of", and "who the members" and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony. *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989); *United States v. Ras*, 713 F.2d 311 (7th Cir. 1983). The fact that an FBI agent's testimony about the statements varies from the language in the indictment does not amend the indictment. *United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id.* The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id.* If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to." *Id*.

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were." These statements are not "fundamentally ambiguous" and do not command an acquittal. Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment. There is no ambiguity as to his meaning, even if the question may have been interpreted differently. *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements. The jury's verdict stands. The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true. This is simply not the case. Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true." The government has also presented evidence for why they were

false. The question of fact is one left for jury determination. The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.


**XIII. Sullivan's Motion to Strike**

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I. As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.


**XIV. Jury Instructions for Sullivan**

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A). This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B). This court refused this paragraph because it does not go to the issue in question. The government does not allege that Sullivan's statements were literally true, but unresponsive. The government claims that Sullivan's statements were false. The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4. As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994). That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5.  For the same reasons as No. 4, this instruction was also refused.  This court has no reason to change the decision.  The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood."  Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7.  For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7.  It is not an accurate statement of the law in this forum.


## XV. Slattery's Motion for Judgment of Acquittal

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud.  This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict.  At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference.  *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt.  Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise.  There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.


**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires." Rule 33 motions are not favored and are granted in only the most extreme cases. *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied. The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

**Conclusion**

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.

Enter:

/s/David H. Coar

_____

David H. Coar
United States District Judge

Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.  05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before this Court are several post-trial motions.  Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.

### <u>Facts</u>

A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery.  The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment.  The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment.  The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment.  The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment.  Defendants now bring post-trial motions for judgment of acquittal or new trial.

## Legal Standard

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979).  The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt. *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).

## Analysis

### I. "Personal Gain" Jury Instruction for Honest Services Fraud

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person.  This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate.  There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office.  149 F.3d 654-57. There is no question that personal gain is an important element of §1346.  In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id*. In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.

## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official. We have dealt with this issue extensively prior to trial, and see no reason to deviate from our previous decision. See *United States v. Sorich*, 427 F. Supp. 2d 820, 831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because, among other reasons, they are one source of the Defendants' fiduciary duties. The indictment offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois constitution, and the *Shakman* Decrees." *Id*. We find now, as we did then, that the *Shakman* Decrees are an appropriate basis for evaluating honest service fraud. Defendants claim that the "City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree protects registered voters. Because the *Shakman* Decree is not the only basis of fraud, the fact that the "people of Chicago" may be a broader than "registered voters" does not bar the consideration of the *Shakman* Decree as one of many sources of consideration. There are, after all, a significant portion of the "people of Chicago" who are registered voters, and valid "victims" even according to Sorich. If the *Shakman* Decree were the only source of law, questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations, citing a Fifth Circuit case in support. However, the Seventh Circuit has held otherwise. In *United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not required to be grounded solely in state law. 195 F.3d 961 (7th Cir. 1999). Federal statutes may be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes. *Id*. There is also a strong grounding in this case in state law and state statutes. The *Shakman*

Decree is but one of several bases for fiduciary duty. As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute. State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services. This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation. The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud. Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes. See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree. This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes.  The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud.  As such, the jury instructions were properly given.

## III.  Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled.  The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement.  The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995).  The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality.  These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

## IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent."  Different circuits have come out differently on this issue.  However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341. 427 F.Supp. 2d at 827-28. We find no reason to rehash all the arguments and reasonings again. In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent". *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990). The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006). In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees. The City has authorized individuals to spend its money to hire and promote workers on a merit basis. When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest. In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.

**V. Amendment of the Indictment at Trial**

-7-

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

**VI. Elements of Mail Fraud**

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received.  In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme.  489 U.S. 705 (U.S. 1989).  This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme."  The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient.  These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme.  Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring. Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

## VIII. Unfair Advantage from Permitting Second Superseding Indictment

McCarthy reargues its pre-trial motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial. This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two. The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

## IX. Computer Deletion Evidence

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial. This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997. That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot

be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in

the charged scheme to defraud. It cannot be used by you as evidence against Defendant John

Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against

unfair prejudice.


## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes

testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that

because Sullivan did not testify, and there was no opportunity for cross-examination, testimony

beyond Sullivan's false statements should have been barred.  McCarthy argues that because they

were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to

show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471

U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004).  Further, because the

statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if

the statement is in the course and in furtherance of the conspiracy.  Fed. R. of Evid. 801(E),

*United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006).  In the present case, Sullivan was a co-

conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy.

This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation

Clause.

**XI. Union Instruction**

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process. As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud. This is simply not the case. This court rejected Defendant's instructions #28, since the authorities cited did not support their contention. Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account. *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005). The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail. The question was not whether union officials participated in hiring. The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited. This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.

**XII. Sullivan's Motion for Acquittal for Count Eight**

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements. Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization.  Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization.  Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding.  A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly.  Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization.  This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false.  Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms."  Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence.  Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan.  Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the organization with Katalinic. A list tracking hires for one of the mass hire sequence, including selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence presented above is viewed in a light most favorable to the government, a reasonable jury could find knowing and willful falsity beyond a reasonable doubt. The evidence, when taken as a whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization. The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of Agent Hauser constituted a constructive amendment of the indictment. In support of this contention, Sullivan asserts that there is variation between the language of the indictment concerning Sullivan's words and the testimony of Agent Hauser. Specifically, the difference between "did not have knowledge about" and "have never heard of", and "who the members" and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony. *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989); *United States v. Ras*, 713 F.2d 311 (7th Cir. 1983). The fact that an FBI agent's testimony about the statements varies from the language in the indictment does not amend the indictment. *United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to." *Id*.

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were." These statements are not "fundamentally ambiguous" and do not command an acquittal. Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment. There is no ambiguity as to his meaning, even if the question may have been interpreted differently. *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements. The jury's verdict stands. The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true. This is simply not the case. Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true." The government has also presented evidence for why they were

-16-

false.  The question of fact is one left for jury determination.  The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.


**XIII.  Sullivan's Motion to Strike**

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I.  As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.


**XIV. Jury Instructions for Sullivan**

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A).  This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B).  This court refused this paragraph because it does not go to the issue in question.  The government does not allege that Sullivan's statements were literally true, but unresponsive.  The government claims that Sullivan's statements were false.  The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4.  As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994).   That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5.  For the same reasons as No. 4, this instruction was also refused.  This court has no reason to change the decision.  The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood."  Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7.  For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7.  It is not an accurate statement of the law in this forum.


## XV. Slattery's Motion for Judgment of Acquittal

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud.  This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict.  At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference.  *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt.  Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise.  There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.


**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires." Rule 33 motions are not favored and are granted in only the most extreme cases. *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied. The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

**Conclusion**

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.

Enter:

/s/David H. Coar

_____

David H. Coar
United States District Judge

Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Before this Court are several post-trial motions. Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.

**Facts**

A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery. The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment. The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment. The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment. The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment. Defendants now bring post-trial motions for judgment of acquittal or new trial.

**Legal Standard**

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979). The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt. *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).

**Analysis**

**I. "Personal Gain" Jury Instruction for Honest Services Fraud**

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person. This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate. There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office. 149 F.3d 654-57. There is no question that personal gain is an important element of §1346. In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id*. In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano*, the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.

## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official.  We have dealt with this issue extensively prior to trial, and see no

reason to deviate from our previous decision. See *United States v. Sorich*, 427 F. Supp. 2d 820,

831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because,

among other reasons, they are one source of the Defendants' fiduciary duties.  The indictment

offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago

Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois

constitution, and the *Shakman* Decrees."  *Id*.  We find now, as we did then, that the *Shakman*

Decrees are an appropriate basis for evaluating honest service fraud.  Defendants claim that the

"City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree

protects registered voters.  Because the *Shakman* Decree is not the only basis of fraud, the fact

that the "people of Chicago" may be a broader than "registered voters" does not bar the

consideration of the *Shakman* Decree as one of many sources of consideration.  There are, after

all, a significant portion of the "people of Chicago" who are registered voters, and valid

"victims" even according to Sorich.  If the *Shakman* Decree were the only source of law,

questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations,

citing a Fifth Circuit case in support.  However, the Seventh Circuit has held otherwise.  In

*United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not

required to be grounded solely in state law.  195 F.3d 961 (7th Cir. 1999).  Federal statutes may

be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes.

*Id*.  There is also a strong grounding in this case in state law and state statutes.  The *Shakman*

Decree is but one of several bases for fiduciary duty. As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute. State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services. This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation. The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud. Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes. See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree. This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes. The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud. As such, the jury instructions were properly given.

## III. Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled. The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement. The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995). The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality. These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

## IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent." Different circuits have come out differently on this issue. However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341. 427 F.Supp. 2d at 827-28. We find no reason to rehash all the arguments and reasonings again. In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent". *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990). The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006). In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees. The City has authorized individuals to spend its money to hire and promote workers on a merit basis. When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest. In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.

**V. Amendment of the Indictment at Trial**

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

**VI. Elements of Mail Fraud**

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received.  In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme.  489 U.S. 705 (U.S. 1989).  This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme."  The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient.  These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme.  Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring. Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

## VIII. Unfair Advantage from Permitting Second Superseding Indictment

McCarthy reargues its pre-trail motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial. This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two. The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

## IX. Computer Deletion Evidence

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial. This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997. That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in the charged scheme to defraud. It cannot be used by you as evidence against Defendant John Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against unfair prejudice.

## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that because Sullivan did not testify, and there was no opportunity for cross-examination, testimony beyond Sullivan's false statements should have been barred. McCarthy argues that because they were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471 U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004). Further, because the statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if the statement is in the course and in furtherance of the conspiracy. Fed. R. of Evid. 801(E), *United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006). In the present case, Sullivan was a co-conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy. This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation Clause.

**XI. Union Instruction**

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process. As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud. This is simply not the case. This court rejected Defendant's instructions #28, since the authorities cited did not support their contention. Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account. *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005). The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail. The question was not whether union officials participated in hiring. The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited. This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.

**XII. Sullivan's Motion for Acquittal for Count Eight**

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements. Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization. Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization. Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding. A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly. Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization. This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false. Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms." Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence. Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan. Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the organization with Katalinic.  A list tracking hires for one of the mass hire sequence, including selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence presented above is viewed in a light most favorable to the government, a reasonable jury could find knowing and willful falsity beyond a reasonable doubt.  The evidence, when taken as a whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization. The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of Agent Hauser constituted a constructive amendment of the indictment. In support of this contention, Sullivan asserts that there is variation between the language of the indictment concerning Sullivan's words and the testimony of Agent Hauser.  Specifically, the difference between "did not have knowledge about" and "have never heard of", and "who the members" and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony.  *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989); *United States v. Ras*, 713 F.2d 311 (7th Cir. 1983).  The fact that an FBI agent's testimony about the statements varies from the language in the indictment does not amend the indictment.  *United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to."  *Id*.

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were."  These statements are not "fundamentally ambiguous" and do not command an acquittal.  Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment.  There is no ambiguity as to his meaning, even if the question may have been interpreted differently.  *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003).  Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements.  The jury's verdict stands.  The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true.  This is simply not the case.  Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true."  The government has also presented evidence for why they were

-16-

false.  The question of fact is one left for jury determination.  The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.

## XIII.  Sullivan's Motion to Strike

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I.  As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.

## XIV. Jury Instructions for Sullivan

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A).  This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B).  This court refused this paragraph because it does not go to the issue in question.  The government does not allege that Sullivan's statements were literally true, but unresponsive.  The government claims that Sullivan's statements were false.  The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4.  As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994).  That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5. For the same reasons as No. 4, this instruction was also refused. This court has no reason to change the decision. The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood." Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7. For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7. It is not an accurate statement of the law in this forum.

**XV. Slattery's Motion for Judgment of Acquittal**

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud. This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict. At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference. *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt. Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise. There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.


**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires." Rule 33 motions are not favored and are granted in only the most extreme cases. *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied. The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

**Conclusion**

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.

Enter:

/s/David H. Coar

_____

David H. Coar
United States District Judge

Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.  05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court are several post-trial motions.  Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.

### Facts

A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery.  The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment.  The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment.  The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment.  The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment. Defendants now bring post-trial motions for judgment of acquittal or new trial.

**Legal Standard**

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979). The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt. *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).

**Analysis**

**I. "Personal Gain" Jury Instruction for Honest Services Fraud**

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person. This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate. There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office. 149 F.3d 654-57. There is no question that personal gain is an important element of §1346. In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id.* In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.


## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official. We have dealt with this issue extensively prior to trial, and see no

reason to deviate from our previous decision. See *United States v. Sorich*, 427 F. Supp. 2d 820,

831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because,

among other reasons, they are one source of the Defendants' fiduciary duties. The indictment

offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago

Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois

constitution, and the *Shakman* Decrees." *Id*. We find now, as we did then, that the *Shakman*

Decrees are an appropriate basis for evaluating honest service fraud. Defendants claim that the

"City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree

protects registered voters. Because the *Shakman* Decree is not the only basis of fraud, the fact

that the "people of Chicago" may be a broader than "registered voters" does not bar the

consideration of the *Shakman* Decree as one of many sources of consideration. There are, after

all, a significant portion of the "people of Chicago" who are registered voters, and valid

"victims" even according to Sorich. If the *Shakman* Decree were the only source of law,

questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations,

citing a Fifth Circuit case in support. However, the Seventh Circuit has held otherwise. In

*United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not

required to be grounded solely in state law. 195 F.3d 961 (7th Cir. 1999). Federal statutes may

be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes.

*Id*. There is also a strong grounding in this case in state law and state statutes. The *Shakman*

Decree is but one of several bases for fiduciary duty. As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute. State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services. This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation. The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud. Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes. See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree. This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes.  The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud.  As such, the jury instructions were properly given.

## III.  Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled.  The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement.  The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995).  The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality.  These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

## IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent."  Different circuits have come out differently on this issue.  However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341. 427 F.Supp. 2d at 827-28. We find no reason to rehash all the arguments and reasonings again. In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent". *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990). The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006). In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees. The City has authorized individuals to spend its money to hire and promote workers on a merit basis. When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest. In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.


**V. Amendment of the Indictment at Trial**

-7-

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

**VI. Elements of Mail Fraud**

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received.  In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme.  489 U.S. 705 (U.S. 1989).  This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme."  The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient.  These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme.  Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring.  Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

## VIII. Unfair Advantage from Permitting Second Superseding Indictment

McCarthy reargues its pre-trial motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial.  This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two.  The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

## IX. Computer Deletion Evidence

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial.  This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997.  That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in the charged scheme to defraud. It cannot be used by you as evidence against Defendant John Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against unfair prejudice.

## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that because Sullivan did not testify, and there was no opportunity for cross-examination, testimony beyond Sullivan's false statements should have been barred. McCarthy argues that because they were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471 U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004). Further, because the statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if the statement is in the course and in furtherance of the conspiracy. Fed. R. of Evid. 801(E), *United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006). In the present case, Sullivan was a co-conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy. This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation Clause.

**XI. Union Instruction**

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process. As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud. This is simply not the case. This court rejected Defendant's instructions #28, since the authorities cited did not support their contention. Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account. *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005). The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail. The question was not whether union officials participated in hiring. The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited. This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.

**XII. Sullivan's Motion for Acquittal for Count Eight**

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements. Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization. Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization. Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding. A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly. Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization. This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false. Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms." Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence. Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan. Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the organization with Katalinic. A list tracking hires for one of the mass hire sequence, including selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence presented above is viewed in a light most favorable to the government, a reasonable jury could find knowing and willful falsity beyond a reasonable doubt. The evidence, when taken as a whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization. The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of Agent Hauser constituted a constructive amendment of the indictment. In support of this contention, Sullivan asserts that there is variation between the language of the indictment concerning Sullivan's words and the testimony of Agent Hauser. Specifically, the difference between "did not have knowledge about" and "have never heard of", and "who the members" and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony. *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989); *United States v. Ras*, 713 F.2d 311 (7th Cir. 1983). The fact that an FBI agent's testimony about the statements varies from the language in the indictment does not amend the indictment. *United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to." *Id*.

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were." These statements are not "fundamentally ambiguous" and do not command an acquittal. Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment. There is no ambiguity as to his meaning, even if the question may have been interpreted differently. *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements. The jury's verdict stands. The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true. This is simply not the case. Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true." The government has also presented evidence for why they were

false.  The question of fact is one left for jury determination.  The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.


**XIII.  Sullivan's Motion to Strike**

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I.  As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.


**XIV. Jury Instructions for Sullivan**

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A).  This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B).  This court refused this paragraph because it does not go to the issue in question.  The government does not allege that Sullivan's statements were literally true, but unresponsive.  The government claims that Sullivan's statements were false.  The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4.  As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994).  That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5. For the same reasons as No. 4, this instruction was also refused. This court has no reason to change the decision. The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood." Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7. For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7. It is not an accurate statement of the law in this forum.


**XV. Slattery's Motion for Judgment of Acquittal**

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud. This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict. At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference. *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt. Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise. There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.


**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires." Rule 33 motions are not favored and are granted in only the most extreme cases. *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied. The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

## Conclusion

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.


Enter:


/s/David H. Coar

_____

David H. Coar
United States District Judge


Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.  05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court are several post-trial motions.  Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.

## Facts

A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery.  The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment.  The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment.  The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment.  The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment. Defendants now bring post-trial motions for judgment of acquittal or new trial.

## Legal Standard

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979). The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt. *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).

## Analysis

### I. "Personal Gain" Jury Instruction for Honest Services Fraud

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person. This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate. There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office. 149 F.3d 654-57. There is no question that personal gain is an important element of §1346. In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id*. In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.

## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official. We have dealt with this issue extensively prior to trial, and see no

reason to deviate from our previous decision. See *United States v. Sorich*, 427 F. Supp. 2d 820,

831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because,

among other reasons, they are one source of the Defendants' fiduciary duties. The indictment

offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago

Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois

constitution, and the *Shakman* Decrees." *Id*. We find now, as we did then, that the *Shakman*

Decrees are an appropriate basis for evaluating honest service fraud. Defendants claim that the

"City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree

protects registered voters. Because the *Shakman* Decree is not the only basis of fraud, the fact

that the "people of Chicago" may be a broader than "registered voters" does not bar the

consideration of the *Shakman* Decree as one of many sources of consideration. There are, after

all, a significant portion of the "people of Chicago" who are registered voters, and valid

"victims" even according to Sorich. If the *Shakman* Decree were the only source of law,

questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations,

citing a Fifth Circuit case in support. However, the Seventh Circuit has held otherwise. In

*United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not

required to be grounded solely in state law. 195 F.3d 961 (7th Cir. 1999). Federal statutes may

be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes.

*Id*. There is also a strong grounding in this case in state law and state statutes. The *Shakman*

Decree is but one of several bases for fiduciary duty. As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute. State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services. This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation. The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud. Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes. See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree. This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes. The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud. As such, the jury instructions were properly given.

## III. Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled. The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement. The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995). The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality. These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

## IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent." Different circuits have come out differently on this issue. However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341.  427 F.Supp. 2d at 827-28.  We find no reason to rehash all the arguments and reasonings again.  In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent".  *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990).  The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006).  In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees.  The City has authorized individuals to spend its money to hire and promote workers on a merit basis.  When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest.  In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.


**V. Amendment of the Indictment at Trial**

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

**VI. Elements of Mail Fraud**

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received.  In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme.  489 U.S. 705 (U.S. 1989).  This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme."  The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient.  These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme.  Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring. Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

**VIII. Unfair Advantage from Permitting Second Superseding Indictment**

McCarthy reargues its pre-trail motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial. This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two. The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

**IX. Computer Deletion Evidence**

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial. This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997. That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in the charged scheme to defraud. It cannot be used by you as evidence against Defendant John Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against unfair prejudice.

## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that because Sullivan did not testify, and there was no opportunity for cross-examination, testimony beyond Sullivan's false statements should have been barred. McCarthy argues that because they were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471 U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004). Further, because the statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if the statement is in the course and in furtherance of the conspiracy. Fed. R. of Evid. 801(E), *United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006). In the present case, Sullivan was a co-conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy. This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation Clause.

**XI.  Union Instruction**

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process.  As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud.  This is simply not the case. This court rejected Defendant's instructions #28, since the authorities cited did not support their contention.  Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account.  *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005).  The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail.  The question was not whether union officials participated in hiring.  The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited.  This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.

**XII. Sullivan's Motion for Acquittal for Count Eight**

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements.  Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization. Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization. Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding. A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly. Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization. This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false. Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms." Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence. Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan. Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the organization with Katalinic. A list tracking hires for one of the mass hire sequence, including selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence presented above is viewed in a light most favorable to the government, a reasonable jury could find knowing and willful falsity beyond a reasonable doubt. The evidence, when taken as a whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization. The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of Agent Hauser constituted a constructive amendment of the indictment. In support of this contention, Sullivan asserts that there is variation between the language of the indictment concerning Sullivan's words and the testimony of Agent Hauser. Specifically, the difference between "did not have knowledge about" and "have never heard of", and "who the members" and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony. *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989); *United States v. Ras*, 713 F.2d 311 (7th Cir. 1983). The fact that an FBI agent's testimony about the statements varies from the language in the indictment does not amend the indictment. *United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to." *Id*.

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were." These statements are not "fundamentally ambiguous" and do not command an acquittal. Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment. There is no ambiguity as to his meaning, even if the question may have been interpreted differently. *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements. The jury's verdict stands. The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true. This is simply not the case. Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true." The government has also presented evidence for why they were

false.  The question of fact is one left for jury determination.  The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.


## XIII.  Sullivan's Motion to Strike

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I.  As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.


## XIV. Jury Instructions for Sullivan

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A).  This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B).  This court refused this paragraph because it does not go to the issue in question.  The government does not allege that Sullivan's statements were literally true, but unresponsive.  The government claims that Sullivan's statements were false.  The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4.  As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994).   That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5.  For the same reasons as No. 4, this instruction was also refused.  This court has no reason to change the decision.  The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood."  Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7.  For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7.  It is not an accurate statement of the law in this forum.


## XV. Slattery's Motion for Judgment of Acquittal

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud.  This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict.  At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference.  *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt.  Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise.  There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.


**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires." Rule 33 motions are not favored and are granted in only the most extreme cases. *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied. The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

## Conclusion

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.

Enter:

/s/David H. Coar

_____

David H. Coar
United States District Judge

Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.  05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court are several post-trial motions.  Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.

## Facts

A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery.  The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment.  The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment.  The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment.  The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment.  Defendants now bring post-trial motions for judgment of acquittal or new trial.


**Legal Standard**

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307 (1979).  The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt. *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).


**Analysis**

**I. "Personal Gain" Jury Instruction for Honest Services Fraud**

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person.  This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate.  There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office.  149 F.3d 654-57. There is no question that personal gain is an important element of §1346.  In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id*. In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.


## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official. We have dealt with this issue extensively prior to trial, and see no

reason to deviate from our previous decision. See *United States v. Sorich*, 427 F. Supp. 2d 820,

831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because,

among other reasons, they are one source of the Defendants' fiduciary duties. The indictment

offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago

Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois

constitution, and the *Shakman* Decrees." *Id*. We find now, as we did then, that the *Shakman*

Decrees are an appropriate basis for evaluating honest service fraud. Defendants claim that the

"City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree

protects registered voters. Because the *Shakman* Decree is not the only basis of fraud, the fact

that the "people of Chicago" may be a broader than "registered voters" does not bar the

consideration of the *Shakman* Decree as one of many sources of consideration. There are, after

all, a significant portion of the "people of Chicago" who are registered voters, and valid

"victims" even according to Sorich. If the *Shakman* Decree were the only source of law,

questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations,

citing a Fifth Circuit case in support. However, the Seventh Circuit has held otherwise. In

*United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not

required to be grounded solely in state law. 195 F.3d 961 (7th Cir. 1999). Federal statutes may

be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes.

*Id*. There is also a strong grounding in this case in state law and state statutes. The *Shakman*

Decree is but one of several bases for fiduciary duty. As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute. State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services. This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation. The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud. Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes. See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree. This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes. The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud. As such, the jury instructions were properly given.

## III. Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled. The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement. The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995). The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality. These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

## IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent." Different circuits have come out differently on this issue. However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341. 427 F.Supp. 2d at 827-28. We find no reason to rehash all the arguments and reasonings again. In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent". *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990). The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006). In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees. The City has authorized individuals to spend its money to hire and promote workers on a merit basis. When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest. In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.

## V. Amendment of the Indictment at Trial

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.


**VI. Elements of Mail Fraud**

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received. In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme. 489 U.S. 705 (U.S. 1989). This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme." The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient. These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme. Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring. Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

## VIII. Unfair Advantage from Permitting Second Superseding Indictment

McCarthy reargues its pre-trial motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial. This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two. The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

## IX. Computer Deletion Evidence

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial. This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997. That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in the charged scheme to defraud. It cannot be used by you as evidence against Defendant John Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against unfair prejudice.

## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that because Sullivan did not testify, and there was no opportunity for cross-examination, testimony beyond Sullivan's false statements should have been barred. McCarthy argues that because they were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471 U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004). Further, because the statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if the statement is in the course and in furtherance of the conspiracy. Fed. R. of Evid. 801(E), *United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006). In the present case, Sullivan was a co-conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy. This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation Clause.

## XI. Union Instruction

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process. As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud. This is simply not the case. This court rejected Defendant's instructions #28, since the authorities cited did not support their contention. Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account. *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005). The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail. The question was not whether union officials participated in hiring. The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited. This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.

## XII. Sullivan's Motion for Acquittal for Count Eight

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements. Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization. Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization. Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding. A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly. Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization. This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false. Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms." Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence. Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan. Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the organization with Katalinic. A list tracking hires for one of the mass hire sequence, including selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence presented above is viewed in a light most favorable to the government, a reasonable jury could find knowing and willful falsity beyond a reasonable doubt. The evidence, when taken as a whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization. The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of Agent Hauser constituted a constructive amendment of the indictment. In support of this contention, Sullivan asserts that there is variation between the language of the indictment concerning Sullivan's words and the testimony of Agent Hauser. Specifically, the difference between "did not have knowledge about" and "have never heard of", and "who the members" and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony. *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989); *United States v. Ras*, 713 F.2d 311 (7th Cir. 1983). The fact that an FBI agent's testimony about the statements varies from the language in the indictment does not amend the indictment. *United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

-15-

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to." *Id*.

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were." These statements are not "fundamentally ambiguous" and do not command an acquittal. Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment. There is no ambiguity as to his meaning, even if the question may have been interpreted differently. *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements. The jury's verdict stands. The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true. This is simply not the case. Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true." The government has also presented evidence for why they were

false.  The question of fact is one left for jury determination.  The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.


**XIII.  Sullivan's Motion to Strike**

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I.  As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.


**XIV. Jury Instructions for Sullivan**

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A).  This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B).  This court refused this paragraph because it does not go to the issue in question.  The government does not allege that Sullivan's statements were literally true, but unresponsive.  The government claims that Sullivan's statements were false.  The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4.  As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994).   That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5. For the same reasons as No. 4, this instruction was also refused. This court has no reason to change the decision. The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood." Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7. For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7. It is not an accurate statement of the law in this forum.

## XV. Slattery's Motion for Judgment of Acquittal

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud. This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict. At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference. *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt. Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise. There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.

**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires." Rule 33 motions are not favored and are granted in only the most extreme cases. *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied. The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

## Conclusion

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.

Enter:

/s/David H. Coar

_____

David H. Coar
United States District Judge

Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.  05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court are several post-trial motions.  Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.

## Facts

A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery.  The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment.  The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment.  The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment.  The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment.  Defendants now bring post-trial motions for judgment of acquittal or new trial.


## Legal Standard

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979).  The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt. *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).


## Analysis

### I. "Personal Gain" Jury Instruction for Honest Services Fraud

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person.  This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate.  There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office.  149 F.3d 654-57. There is no question that personal gain is an important element of §1346.  In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id.* In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.

## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official. We have dealt with this issue extensively prior to trial, and see no

reason to deviate from our previous decision. See *United States v. Sorich*, 427 F. Supp. 2d 820,

831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because,

among other reasons, they are one source of the Defendants' fiduciary duties. The indictment

offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago

Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois

constitution, and the *Shakman* Decrees." *Id*. We find now, as we did then, that the *Shakman*

Decrees are an appropriate basis for evaluating honest service fraud. Defendants claim that the

"City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree

protects registered voters. Because the *Shakman* Decree is not the only basis of fraud, the fact

that the "people of Chicago" may be a broader than "registered voters" does not bar the

consideration of the *Shakman* Decree as one of many sources of consideration. There are, after

all, a significant portion of the "people of Chicago" who are registered voters, and valid

"victims" even according to Sorich. If the *Shakman* Decree were the only source of law,

questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations,

citing a Fifth Circuit case in support. However, the Seventh Circuit has held otherwise. In

*United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not

required to be grounded solely in state law. 195 F.3d 961 (7th Cir. 1999). Federal statutes may

be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes.

*Id*. There is also a strong grounding in this case in state law and state statutes. The *Shakman*

Decree is but one of several bases for fiduciary duty. As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute. State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services. This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation. The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud. Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes. See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree. This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes. The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud. As such, the jury instructions were properly given.

## III. Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled. The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement. The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995). The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality. These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

## IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent." Different circuits have come out differently on this issue. However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341. 427 F.Supp. 2d at 827-28. We find no reason to rehash all the arguments and reasonings again. In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent". *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990). The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006). In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees. The City has authorized individuals to spend its money to hire and promote workers on a merit basis. When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest. In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.

**V. Amendment of the Indictment at Trial**

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

**VI. Elements of Mail Fraud**

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received. In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme. 489 U.S. 705 (U.S. 1989). This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme." The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient. These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme. Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring. Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

## VIII. Unfair Advantage from Permitting Second Superseding Indictment

McCarthy reargues its pre-trail motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial. This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two. The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

## IX. Computer Deletion Evidence

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial. This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997. That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in the charged scheme to defraud. It cannot be used by you as evidence against Defendant John Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against unfair prejudice.

## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that because Sullivan did not testify, and there was no opportunity for cross-examination, testimony beyond Sullivan's false statements should have been barred. McCarthy argues that because they were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471 U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004). Further, because the statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if the statement is in the course and in furtherance of the conspiracy. Fed. R. of Evid. 801(E), *United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006). In the present case, Sullivan was a co-conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy. This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation Clause.

**XI.  Union Instruction**

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process.  As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud.  This is simply not the case.  This court rejected Defendant's instructions #28, since the authorities cited did not support their contention.  Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account.  *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005).  The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail.  The question was not whether union officials participated in hiring.  The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited.  This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.

**XII. Sullivan's Motion for Acquittal for Count Eight**

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements.  Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization. Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization. Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding. A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly. Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization. This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false. Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms." Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence. Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan. Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the organization with Katalinic. A list tracking hires for one of the mass hire sequence, including selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence presented above is viewed in a light most favorable to the government, a reasonable jury could find knowing and willful falsity beyond a reasonable doubt. The evidence, when taken as a whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization. The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of Agent Hauser constituted a constructive amendment of the indictment. In support of this contention, Sullivan asserts that there is variation between the language of the indictment concerning Sullivan's words and the testimony of Agent Hauser. Specifically, the difference between "did not have knowledge about" and "have never heard of", and "who the members" and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony. *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989); *United States v. Ras*, 713 F.2d 311 (7th Cir. 1983). The fact that an FBI agent's testimony about the statements varies from the language in the indictment does not amend the indictment. *United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to."  *Id*.

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were."  These statements are not "fundamentally ambiguous" and do not command an acquittal.  Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment.  There is no ambiguity as to his meaning, even if the question may have been interpreted differently.  *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003).  Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements.  The jury's verdict stands.  The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true.  This is simply not the case.  Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true."  The government has also presented evidence for why they were

false.  The question of fact is one left for jury determination.  The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.


**XIII.  Sullivan's Motion to Strike**

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I.  As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.


**XIV. Jury Instructions for Sullivan**

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A).  This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B).  This court refused this paragraph because it does not go to the issue in question.  The government does not allege that Sullivan's statements were literally true, but unresponsive.  The government claims that Sullivan's statements were false.  The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4.  As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994).   That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5. For the same reasons as No. 4, this instruction was also refused. This court has no reason to change the decision. The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood." Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7. For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7. It is not an accurate statement of the law in this forum.


## XV. Slattery's Motion for Judgment of Acquittal

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud. This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict. At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference. *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt. Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise. There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.


**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires."  Rule 33 motions are not favored and are granted in only the most extreme cases.  *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998).  New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights."  *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993).  For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied.  The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

**Conclusion**

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.

Enter:

/s/David H. Coar

_____

David H. Coar
United States District Judge

Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.  05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court are several post-trial motions.  Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.


**Facts**

A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery.  The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment.  The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment.  The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment.  The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment. Defendants now bring post-trial motions for judgment of acquittal or new trial.

## Legal Standard

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979). The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt. *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).

## Analysis

### I. "Personal Gain" Jury Instruction for Honest Services Fraud

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person. This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate. There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office. 149 F.3d 654-57. There is no question that personal gain is an important element of §1346. In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id.* In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.

## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official.  We have dealt with this issue extensively prior to trial, and see no

reason to deviate from our previous decision.  See *United States v. Sorich*, 427 F. Supp. 2d 820,

831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because,

among other reasons, they are one source of the Defendants' fiduciary duties.  The indictment

offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago

Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois

constitution, and the *Shakman* Decrees."  *Id*.  We find now, as we did then, that the *Shakman*

Decrees are an appropriate basis for evaluating honest service fraud.  Defendants claim that the

"City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree

protects registered voters.  Because the *Shakman* Decree is not the only basis of fraud, the fact

that the "people of Chicago" may be a broader than "registered voters" does not bar the

consideration of the *Shakman* Decree as one of many sources of consideration.  There are, after

all, a significant portion of the "people of Chicago" who are registered voters, and valid

"victims" even according to Sorich.  If the *Shakman* Decree were the only source of law,

questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations,

citing a Fifth Circuit case in support.  However, the Seventh Circuit has held otherwise.  In

*United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not

required to be grounded solely in state law.  195 F.3d 961 (7th Cir. 1999).  Federal statutes may

be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes.

*Id*.  There is also a strong grounding in this case in state law and state statutes.  The *Shakman*

Decree is but one of several bases for fiduciary duty. As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute. State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services. This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation. The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud. Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes. See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree. This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes.  The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud.  As such, the jury instructions were properly given.

## III.  Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled.  The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement.  The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995).  The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality.  These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

## IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent."  Different circuits have come out differently on this issue.  However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341. 427 F.Supp. 2d at 827-28. We find no reason to rehash all the arguments and reasonings again. In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent". *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990). The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006). In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees. The City has authorized individuals to spend its money to hire and promote workers on a merit basis. When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest. In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.

## V. Amendment of the Indictment at Trial

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

**VI. Elements of Mail Fraud**

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received.  In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme.  489 U.S. 705 (U.S. 1989).  This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme."  The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient.  These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme.  Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring. Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

## VIII. Unfair Advantage from Permitting Second Superseding Indictment

McCarthy reargues its pre-trail motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial. This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two. The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

## IX. Computer Deletion Evidence

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial. This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997. That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in the charged scheme to defraud. It cannot be used by you as evidence against Defendant John Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against unfair prejudice.

## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that because Sullivan did not testify, and there was no opportunity for cross-examination, testimony beyond Sullivan's false statements should have been barred. McCarthy argues that because they were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471 U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004). Further, because the statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if the statement is in the course and in furtherance of the conspiracy. Fed. R. of Evid. 801(E), *United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006). In the present case, Sullivan was a co-conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy. This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation Clause.

## XI.  Union Instruction

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process.  As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud.  This is simply not the case.  This court rejected Defendant's instructions #28, since the authorities cited did not support their contention.  Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account.  *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005).  The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail.  The question was not whether union officials participated in hiring.  The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited.  This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.

## XII. Sullivan's Motion for Acquittal for Count Eight

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements.  Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization. Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization. Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding. A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly. Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization. This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false. Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms." Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence. Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan. Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the organization with Katalinic. A list tracking hires for one of the mass hire sequence, including selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence presented above is viewed in a light most favorable to the government, a reasonable jury could find knowing and willful falsity beyond a reasonable doubt. The evidence, when taken as a whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization. The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of Agent Hauser constituted a constructive amendment of the indictment. In support of this contention, Sullivan asserts that there is variation between the language of the indictment concerning Sullivan's words and the testimony of Agent Hauser. Specifically, the difference between "did not have knowledge about" and "have never heard of", and "who the members" and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony. *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989); *United States v. Ras*, 713 F.2d 311 (7th Cir. 1983). The fact that an FBI agent's testimony about the statements varies from the language in the indictment does not amend the indictment. *United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to." *Id*.

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were." These statements are not "fundamentally ambiguous" and do not command an acquittal. Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment. There is no ambiguity as to his meaning, even if the question may have been interpreted differently. *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements. The jury's verdict stands. The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true. This is simply not the case. Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true." The government has also presented evidence for why they were

false.  The question of fact is one left for jury determination.  The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.


**XIII.  Sullivan's Motion to Strike**

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I.  As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.


**XIV. Jury Instructions for Sullivan**

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A).  This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B).  This court refused this paragraph because it does not go to the issue in question.  The government does not allege that Sullivan's statements were literally true, but unresponsive.  The government claims that Sullivan's statements were false.  The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4.  As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994).   That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5. For the same reasons as No. 4, this instruction was also refused. This court has no reason to change the decision. The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood." Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7. For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7. It is not an accurate statement of the law in this forum.


**XV. Slattery's Motion for Judgment of Acquittal**

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud. This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict. At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference. *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt. Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise. There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.

**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires." Rule 33 motions are not favored and are granted in only the most extreme cases. *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied. The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

## Conclusion

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.

Enter:

/s/David H. Coar

_____

David H. Coar
United States District Judge

Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.  05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before this Court are several post-trial motions.  Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.


### <u>Facts</u>

A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery.  The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment.  The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment.  The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment.  The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment.  Defendants now bring post-trial motions for judgment of acquittal or new trial.


**Legal Standard**

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979).  The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt. *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).


**Analysis**

**I. "Personal Gain" Jury Instruction for Honest Services Fraud**

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person.  This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate.  There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office.  149 F.3d 654-57. There is no question that personal gain is an important element of §1346.  In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id.* In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.


## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official. We have dealt with this issue extensively prior to trial, and see no reason to deviate from our previous decision. See *United States v. Sorich*, 427 F. Supp. 2d 820, 831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because, among other reasons, they are one source of the Defendants' fiduciary duties. The indictment offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois constitution, and the *Shakman* Decrees." *Id*. We find now, as we did then, that the *Shakman* Decrees are an appropriate basis for evaluating honest service fraud. Defendants claim that the "City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree protects registered voters. Because the *Shakman* Decree is not the only basis of fraud, the fact that the "people of Chicago" may be a broader than "registered voters" does not bar the consideration of the *Shakman* Decree as one of many sources of consideration. There are, after all, a significant portion of the "people of Chicago" who are registered voters, and valid "victims" even according to Sorich. If the *Shakman* Decree were the only source of law, questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations, citing a Fifth Circuit case in support. However, the Seventh Circuit has held otherwise. In *United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not required to be grounded solely in state law. 195 F.3d 961 (7th Cir. 1999). Federal statutes may be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes. *Id*. There is also a strong grounding in this case in state law and state statutes. The *Shakman*

Decree is but one of several bases for fiduciary duty. As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute. State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services. This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation. The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud. Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes. See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree. This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes. The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud. As such, the jury instructions were properly given.

## III. Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled. The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement. The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995). The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality. These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

## IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent." Different circuits have come out differently on this issue. However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341. 427 F.Supp. 2d at 827-28. We find no reason to rehash all the arguments and reasonings again. In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent". *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990). The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006). In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees. The City has authorized individuals to spend its money to hire and promote workers on a merit basis. When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest. In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.


## V. Amendment of the Indictment at Trial

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

## VI. Elements of Mail Fraud

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received.  In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme.  489 U.S. 705 (U.S. 1989).  This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme."  The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient.  These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme.  Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring. Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

## VIII. Unfair Advantage from Permitting Second Superseding Indictment

McCarthy reargues its pre-trial motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial. This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two. The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

## IX. Computer Deletion Evidence

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial. This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997. That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot

be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in

the charged scheme to defraud. It cannot be used by you as evidence against Defendant John

Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against

unfair prejudice.


## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes

testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that

because Sullivan did not testify, and there was no opportunity for cross-examination, testimony

beyond Sullivan's false statements should have been barred.  McCarthy argues that because they

were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to

show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471

U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004).  Further, because the

statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if

the statement is in the course and in furtherance of the conspiracy.  Fed. R. of Evid. 801(E),

*United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006).  In the present case, Sullivan was a co-

conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy.

This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation

Clause.

**XI. Union Instruction**

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process. As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud. This is simply not the case. This court rejected Defendant's instructions #28, since the authorities cited did not support their contention. Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account. *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005). The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail. The question was not whether union officials participated in hiring. The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited. This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.

**XII. Sullivan's Motion for Acquittal for Count Eight**

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements. Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization. Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization. Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding. A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly. Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization. This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false. Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms." Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence. Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan. Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the organization with Katalinic. A list tracking hires for one of the mass hire sequence, including selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence presented above is viewed in a light most favorable to the government, a reasonable jury could find knowing and willful falsity beyond a reasonable doubt. The evidence, when taken as a whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization. The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of Agent Hauser constituted a constructive amendment of the indictment. In support of this contention, Sullivan asserts that there is variation between the language of the indictment concerning Sullivan's words and the testimony of Agent Hauser. Specifically, the difference between "did not have knowledge about" and "have never heard of", and "who the members" and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony. *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989); *United States v. Ras*, 713 F.2d 311 (7th Cir. 1983). The fact that an FBI agent's testimony about the statements varies from the language in the indictment does not amend the indictment. *United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to." *Id*.

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were." These statements are not "fundamentally ambiguous" and do not command an acquittal. Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment. There is no ambiguity as to his meaning, even if the question may have been interpreted differently. *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements. The jury's verdict stands. The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true. This is simply not the case. Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true." The government has also presented evidence for why they were

false.  The question of fact is one left for jury determination.  The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.

## XIII.  Sullivan's Motion to Strike

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I.  As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.

## XIV. Jury Instructions for Sullivan

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A).  This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B).  This court refused this paragraph because it does not go to the issue in question.  The government does not allege that Sullivan's statements were literally true, but unresponsive.  The government claims that Sullivan's statements were false.  The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4.  As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994).   That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5. For the same reasons as No. 4, this instruction was also refused. This court has no reason to change the decision. The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood." Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7. For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7. It is not an accurate statement of the law in this forum.


**XV. Slattery's Motion for Judgment of Acquittal**

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud. This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict. At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference. *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt. Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise. There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.

**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires." Rule 33 motions are not favored and are granted in only the most extreme cases. *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied. The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

**Conclusion**

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.

Enter:

/s/David H. Coar

_____

David H. Coar
United States District Judge

Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.  05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court are several post-trial motions.  Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.


## Facts

A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery.  The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment.  The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment.  The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment.  The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment.  Defendants now bring post-trial motions for judgment of acquittal or new trial.

## Legal Standard

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979).  The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt. *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).

## Analysis

### I. "Personal Gain" Jury Instruction for Honest Services Fraud

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person.  This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate.  There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office.  149 F.3d 654-57. There is no question that personal gain is an important element of §1346.  In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id*. In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.

## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official. We have dealt with this issue extensively prior to trial, and see no reason to deviate from our previous decision. See *United States v. Sorich*, 427 F. Supp. 2d 820, 831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because, among other reasons, they are one source of the Defendants' fiduciary duties. The indictment offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois constitution, and the *Shakman* Decrees." *Id*. We find now, as we did then, that the *Shakman* Decrees are an appropriate basis for evaluating honest service fraud. Defendants claim that the "City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree protects registered voters. Because the *Shakman* Decree is not the only basis of fraud, the fact that the "people of Chicago" may be a broader than "registered voters" does not bar the consideration of the *Shakman* Decree as one of many sources of consideration. There are, after all, a significant portion of the "people of Chicago" who are registered voters, and valid "victims" even according to Sorich. If the *Shakman* Decree were the only source of law, questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations, citing a Fifth Circuit case in support. However, the Seventh Circuit has held otherwise. In *United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not required to be grounded solely in state law. 195 F.3d 961 (7th Cir. 1999). Federal statutes may be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes. *Id*. There is also a strong grounding in this case in state law and state statutes. The *Shakman*

Decree is but one of several bases for fiduciary duty. As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute. State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services. This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation. The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud. Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes. See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree. This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes. The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud. As such, the jury instructions were properly given.

## III. Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled. The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement. The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995). The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality. These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

## IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent." Different circuits have come out differently on this issue. However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341. 427 F.Supp. 2d at 827-28. We find no reason to rehash all the arguments and reasonings again. In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent". *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990). The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006). In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees. The City has authorized individuals to spend its money to hire and promote workers on a merit basis. When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest. In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.

**V. Amendment of the Indictment at Trial**

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

## VI. Elements of Mail Fraud

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received. In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme. 489 U.S. 705 (U.S. 1989). This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme." The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient. These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme. Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring. Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

## VIII. Unfair Advantage from Permitting Second Superseding Indictment

McCarthy reargues its pre-trail motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial. This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two. The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

## IX. Computer Deletion Evidence

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial. This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997. That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in the charged scheme to defraud. It cannot be used by you as evidence against Defendant John Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against unfair prejudice.

## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that because Sullivan did not testify, and there was no opportunity for cross-examination, testimony beyond Sullivan's false statements should have been barred. McCarthy argues that because they were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471 U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004). Further, because the statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if the statement is in the course and in furtherance of the conspiracy. Fed. R. of Evid. 801(E), *United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006). In the present case, Sullivan was a co-conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy. This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation Clause.

**XI.  Union Instruction**

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process.  As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud.  This is simply not the case.  This court rejected Defendant's instructions #28, since the authorities cited did not support their contention.  Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account.  *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005).  The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail.  The question was not whether union officials participated in hiring.  The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited.  This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.

**XII. Sullivan's Motion for Acquittal for Count Eight**

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements.  Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization. Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization. Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding. A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly. Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization. This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false. Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms." Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence. Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan. Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the organization with Katalinic. A list tracking hires for one of the mass hire sequence, including selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence presented above is viewed in a light most favorable to the government, a reasonable jury could find knowing and willful falsity beyond a reasonable doubt. The evidence, when taken as a whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization. The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of Agent Hauser constituted a constructive amendment of the indictment. In support of this contention, Sullivan asserts that there is variation between the language of the indictment concerning Sullivan's words and the testimony of Agent Hauser. Specifically, the difference between "did not have knowledge about" and "have never heard of", and "who the members" and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony. *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989); *United States v. Ras*, 713 F.2d 311 (7th Cir. 1983). The fact that an FBI agent's testimony about the statements varies from the language in the indictment does not amend the indictment. *United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to." *Id.*

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were." These statements are not "fundamentally ambiguous" and do not command an acquittal. Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment. There is no ambiguity as to his meaning, even if the question may have been interpreted differently. *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements. The jury's verdict stands. The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true. This is simply not the case. Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true." The government has also presented evidence for why they were

false.  The question of fact is one left for jury determination.  The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.


**XIII.  Sullivan's Motion to Strike**

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I.  As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.


**XIV. Jury Instructions for Sullivan**

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A).  This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B).  This court refused this paragraph because it does not go to the issue in question.  The government does not allege that Sullivan's statements were literally true, but unresponsive.  The government claims that Sullivan's statements were false.  The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4.  As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994).   That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5. For the same reasons as No. 4, this instruction was also refused. This court has no reason to change the decision. The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood." Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7. For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7. It is not an accurate statement of the law in this forum.


**XV. Slattery's Motion for Judgment of Acquittal**

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud. This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict. At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference. *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt. Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise. There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.


**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires." Rule 33 motions are not favored and are granted in only the most extreme cases. *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied. The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

## Conclusion

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.

Enter:

/s/David H. Coar

_____

David H. Coar
United States District Judge

Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.  05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before this Court are several post-trial motions.  Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.

**<u>Facts</u>**

A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery.  The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment.  The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment.  The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment.  The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment.  Defendants now bring post-trial motions for judgment of acquittal or new trial.

## Legal Standard

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307 (1979).  The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt.  *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).

## Analysis

### I. "Personal Gain" Jury Instruction for Honest Services Fraud

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person.  This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate.  There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office.  149 F.3d 654-57. There is no question that personal gain is an important element of §1346.  In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id*. In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.

## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official. We have dealt with this issue extensively prior to trial, and see no reason to deviate from our previous decision. See *United States v. Sorich*, 427 F. Supp. 2d 820, 831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because, among other reasons, they are one source of the Defendants' fiduciary duties. The indictment offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois constitution, and the *Shakman* Decrees." *Id*. We find now, as we did then, that the *Shakman* Decrees are an appropriate basis for evaluating honest service fraud. Defendants claim that the "City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree protects registered voters. Because the *Shakman* Decree is not the only basis of fraud, the fact that the "people of Chicago" may be a broader than "registered voters" does not bar the consideration of the *Shakman* Decree as one of many sources of consideration. There are, after all, a significant portion of the "people of Chicago" who are registered voters, and valid "victims" even according to Sorich. If the *Shakman* Decree were the only source of law, questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations, citing a Fifth Circuit case in support. However, the Seventh Circuit has held otherwise. In *United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not required to be grounded solely in state law. 195 F.3d 961 (7th Cir. 1999). Federal statutes may be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes. *Id*. There is also a strong grounding in this case in state law and state statutes. The *Shakman*

Decree is but one of several bases for fiduciary duty. As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute. State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services. This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation. The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud. Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes. See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree. This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes. The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud. As such, the jury instructions were properly given.

### III. Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled. The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement. The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995). The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality. These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

### IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent." Different circuits have come out differently on this issue. However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341. 427 F.Supp. 2d at 827-28. We find no reason to rehash all the arguments and reasonings again. In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent". *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990). The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006). In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees. The City has authorized individuals to spend its money to hire and promote workers on a merit basis. When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest. In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.

**V. Amendment of the Indictment at Trial**

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

**VI. Elements of Mail Fraud**

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received. In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme. 489 U.S. 705 (U.S. 1989). This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme." The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient. These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme. Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring. Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

## VIII. Unfair Advantage from Permitting Second Superseding Indictment

McCarthy reargues its pre-trail motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial. This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two. The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

## IX. Computer Deletion Evidence

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial. This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997. That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot

be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in

the charged scheme to defraud. It cannot be used by you as evidence against Defendant John

Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against

unfair prejudice.


## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes

testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that

because Sullivan did not testify, and there was no opportunity for cross-examination, testimony

beyond Sullivan's false statements should have been barred.  McCarthy argues that because they

were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to

show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471

U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004).  Further, because the

statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if

the statement is in the course and in furtherance of the conspiracy.  Fed. R. of Evid. 801(E),

*United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006).  In the present case, Sullivan was a co-

conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy.

This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation

Clause.

**XI. Union Instruction**

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process. As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud. This is simply not the case. This court rejected Defendant's instructions #28, since the authorities cited did not support their contention. Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account. *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005). The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail. The question was not whether union officials participated in hiring. The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited. This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.

**XII. Sullivan's Motion for Acquittal for Count Eight**

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements. Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization. Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization. Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding. A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly. Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization. This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false. Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms." Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence. Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan. Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the organization with Katalinic.  A list tracking hires for one of the mass hire sequence, including selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence presented above is viewed in a light most favorable to the government, a reasonable jury could find knowing and willful falsity beyond a reasonable doubt.  The evidence, when taken as a whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization. The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of Agent Hauser constituted a constructive amendment of the indictment. In support of this contention, Sullivan asserts that there is variation between the language of the indictment concerning Sullivan's words and the testimony of Agent Hauser.  Specifically, the difference between "did not have knowledge about" and "have never heard of", and "who the members" and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony.  *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989); *United States v. Ras*, 713 F.2d 311 (7th Cir. 1983).  The fact that an FBI agent's testimony about the statements varies from the language in the indictment does not amend the indictment.  *United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to." *Id*.

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were." These statements are not "fundamentally ambiguous" and do not command an acquittal. Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment. There is no ambiguity as to his meaning, even if the question may have been interpreted differently. *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements. The jury's verdict stands. The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true. This is simply not the case. Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true." The government has also presented evidence for why they were

false.  The question of fact is one left for jury determination.  The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.


**XIII.  Sullivan's Motion to Strike**

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I.  As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.


**XIV. Jury Instructions for Sullivan**

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A).  This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B).  This court refused this paragraph because it does not go to the issue in question.  The government does not allege that Sullivan's statements were literally true, but unresponsive.  The government claims that Sullivan's statements were false.  The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4.  As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994).   That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5.  For the same reasons as No. 4, this instruction was also refused.  This court has no reason to change the decision.  The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood."  Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7.  For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7.  It is not an accurate statement of the law in this forum.


**XV. Slattery's Motion for Judgment of Acquittal**

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud.  This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict.  At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference.  *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt.  Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise.  There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.

**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires." Rule 33 motions are not favored and are granted in only the most extreme cases. *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied. The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

**Conclusion**

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.

Enter:

/s/David H. Coar

_____

David H. Coar
United States District Judge

Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court are several post-trial motions. Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.

## Facts

A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery. The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment. The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment. The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment. The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment. Defendants now bring post-trial motions for judgment of acquittal or new trial.

## Legal Standard

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979). The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt. *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).

## Analysis

### I. "Personal Gain" Jury Instruction for Honest Services Fraud

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person. This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate. There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office. 149 F.3d 654-57. There is no question that personal gain is an important element of §1346. In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id*. In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.

## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official.  We have dealt with this issue extensively prior to trial, and see no

reason to deviate from our previous decision.  See *United States v. Sorich*, 427 F. Supp. 2d 820,

831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because,

among other reasons, they are one source of the Defendants' fiduciary duties.  The indictment

offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago

Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois

constitution, and the *Shakman* Decrees."  *Id*.  We find now, as we did then, that the *Shakman*

Decrees are an appropriate basis for evaluating honest service fraud.  Defendants claim that the

"City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree

protects registered voters.  Because the *Shakman* Decree is not the only basis of fraud, the fact

that the "people of Chicago" may be a broader than "registered voters" does not bar the

consideration of the *Shakman* Decree as one of many sources of consideration.  There are, after

all, a significant portion of the "people of Chicago" who are registered voters, and valid

"victims" even according to Sorich.  If the *Shakman* Decree were the only source of law,

questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations,

citing a Fifth Circuit case in support.  However, the Seventh Circuit has held otherwise.  In

*United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not

required to be grounded solely in state law.  195 F.3d 961 (7th Cir. 1999).  Federal statutes may

be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes.

*Id*.  There is also a strong grounding in this case in state law and state statutes.  The *Shakman*

Decree is but one of several bases for fiduciary duty. As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute. State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services. This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation. The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud. Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes. See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree. This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes. The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud. As such, the jury instructions were properly given.

## III.  Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled. The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement. The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995). The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality. These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

## IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent." Different circuits have come out differently on this issue. However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341. 427 F.Supp. 2d at 827-28. We find no reason to rehash all the arguments and reasonings again. In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent". *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990). The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006). In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees. The City has authorized individuals to spend its money to hire and promote workers on a merit basis. When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest. In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.


**V. Amendment of the Indictment at Trial**

-7-

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

**VI. Elements of Mail Fraud**

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received. In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme. 489 U.S. 705 (U.S. 1989). This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme." The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient. These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme. Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring. Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

## VIII. Unfair Advantage from Permitting Second Superseding Indictment

McCarthy reargues its pre-trial motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial. This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two. The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

## IX. Computer Deletion Evidence

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial. This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997. That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot

be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in

the charged scheme to defraud. It cannot be used by you as evidence against Defendant John

Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against

unfair prejudice.


## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes

testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that

because Sullivan did not testify, and there was no opportunity for cross-examination, testimony

beyond Sullivan's false statements should have been barred. McCarthy argues that because they

were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to

show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471

U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004). Further, because the

statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if

the statement is in the course and in furtherance of the conspiracy. Fed. R. of Evid. 801(E),

*United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006). In the present case, Sullivan was a co-

conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy.

This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation

Clause.

**XI. Union Instruction**

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process. As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud. This is simply not the case. This court rejected Defendant's instructions #28, since the authorities cited did not support their contention. Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account. *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005). The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail. The question was not whether union officials participated in hiring. The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited. This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.

**XII. Sullivan's Motion for Acquittal for Count Eight**

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements. Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization. Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization. Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding. A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly. Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization. This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false. Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms." Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence. Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan. Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the organization with Katalinic. A list tracking hires for one of the mass hire sequence, including selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence presented above is viewed in a light most favorable to the government, a reasonable jury could find knowing and willful falsity beyond a reasonable doubt. The evidence, when taken as a whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization. The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of Agent Hauser constituted a constructive amendment of the indictment. In support of this contention, Sullivan asserts that there is variation between the language of the indictment concerning Sullivan's words and the testimony of Agent Hauser. Specifically, the difference between "did not have knowledge about" and "have never heard of", and "who the members" and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony. *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989); *United States v. Ras*, 713 F.2d 311 (7th Cir. 1983). The fact that an FBI agent's testimony about the statements varies from the language in the indictment does not amend the indictment. *United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to." *Id*.

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were." These statements are not "fundamentally ambiguous" and do not command an acquittal. Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment. There is no ambiguity as to his meaning, even if the question may have been interpreted differently. *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements. The jury's verdict stands. The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true. This is simply not the case. Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true." The government has also presented evidence for why they were

-16-

false. The question of fact is one left for jury determination. The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.

**XIII. Sullivan's Motion to Strike**

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I. As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.

**XIV. Jury Instructions for Sullivan**

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A). This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B). This court refused this paragraph because it does not go to the issue in question. The government does not allege that Sullivan's statements were literally true, but unresponsive. The government claims that Sullivan's statements were false. The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4. As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994). That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5. For the same reasons as No. 4, this instruction was also refused. This court has no reason to change the decision. The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood." Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7. For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7. It is not an accurate statement of the law in this forum.


## XV. Slattery's Motion for Judgment of Acquittal

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud. This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict. At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference. *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt. Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise. There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.

**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires." Rule 33 motions are not favored and are granted in only the most extreme cases. *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied. The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

## Conclusion

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.

Enter:

/s/David H. Coar

_____

David H. Coar
United States District Judge

Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OPINION AND ORDER

Before this Court are several post-trial motions. Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.


### Facts

A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery. The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment. The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment. The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment. The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment. Defendants now bring post-trial motions for judgment of acquittal or new trial.

## Legal Standard

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979). The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt. *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).

## Analysis

### I. "Personal Gain" Jury Instruction for Honest Services Fraud

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person. This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate. There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office. 149 F.3d 654-57. There is no question that personal gain is an important element of §1346. In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id*. In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.

## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official.  We have dealt with this issue extensively prior to trial, and see no

reason to deviate from our previous decision. See *United States v. Sorich*, 427 F. Supp. 2d 820,

831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because,

among other reasons, they are one source of the Defendants' fiduciary duties.  The indictment

offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago

Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois

constitution, and the *Shakman* Decrees." *Id*.  We find now, as we did then, that the *Shakman*

Decrees are an appropriate basis for evaluating honest service fraud.  Defendants claim that the

"City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree

protects registered voters.  Because the *Shakman* Decree is not the only basis of fraud, the fact

that the "people of Chicago" may be a broader than "registered voters" does not bar the

consideration of the *Shakman* Decree as one of many sources of consideration.  There are, after

all, a significant portion of the "people of Chicago" who are registered voters, and valid

"victims" even according to Sorich.  If the *Shakman* Decree were the only source of law,

questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations,

citing a Fifth Circuit case in support.  However, the Seventh Circuit has held otherwise.  In

*United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not

required to be grounded solely in state law.  195 F.3d 961 (7th Cir. 1999).  Federal statutes may

be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes.

*Id*.  There is also a strong grounding in this case in state law and state statutes.  The *Shakman*

-4-

Decree is but one of several bases for fiduciary duty.  As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute.  State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services.  This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation.  The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud.  Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes.  See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree.  This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes.  The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud.  As such, the jury instructions were properly given.

## III.  Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled.  The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement.  The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995).  The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality.  These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

## IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent."  Different circuits have come out differently on this issue.  However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341.  427 F.Supp. 2d at 827-28.  We find no reason to rehash all the arguments and reasonings again.  In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent".  *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990).  The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006).  In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees.  The City has authorized individuals to spend its money to hire and promote workers on a merit basis.  When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest.  In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.


## V. Amendment of the Indictment at Trial

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

**VI. Elements of Mail Fraud**

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received. In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme. 489 U.S. 705 (U.S. 1989). This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme." The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient. These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme. Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring. Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

## VIII. Unfair Advantage from Permitting Second Superseding Indictment

McCarthy reargues its pre-trail motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial. This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two. The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

## IX. Computer Deletion Evidence

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial. This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997. That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in the charged scheme to defraud. It cannot be used by you as evidence against Defendant John Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against unfair prejudice.

## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that because Sullivan did not testify, and there was no opportunity for cross-examination, testimony beyond Sullivan's false statements should have been barred. McCarthy argues that because they were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471 U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004). Further, because the statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if the statement is in the course and in furtherance of the conspiracy. Fed. R. of Evid. 801(E), *United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006). In the present case, Sullivan was a co-conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy. This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation Clause.

## XI. Union Instruction

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process. As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud. This is simply not the case. This court rejected Defendant's instructions #28, since the authorities cited did not support their contention. Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account. *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005). The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail. The question was not whether union officials participated in hiring. The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited. This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.

## XII. Sullivan's Motion for Acquittal for Count Eight

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements. Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization. Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization. Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding. A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly. Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization. This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false. Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms." Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence. Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan. Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the organization with Katalinic. A list tracking hires for one of the mass hire sequence, including selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence presented above is viewed in a light most favorable to the government, a reasonable jury could find knowing and willful falsity beyond a reasonable doubt. The evidence, when taken as a whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization. The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of Agent Hauser constituted a constructive amendment of the indictment. In support of this contention, Sullivan asserts that there is variation between the language of the indictment concerning Sullivan's words and the testimony of Agent Hauser. Specifically, the difference between "did not have knowledge about" and "have never heard of", and "who the members" and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony. *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989); *United States v. Ras*, 713 F.2d 311 (7th Cir. 1983). The fact that an FBI agent's testimony about the statements varies from the language in the indictment does not amend the indictment. *United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to." *Id*.

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were." These statements are not "fundamentally ambiguous" and do not command an acquittal. Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment. There is no ambiguity as to his meaning, even if the question may have been interpreted differently. *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements. The jury's verdict stands. The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true. This is simply not the case. Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true." The government has also presented evidence for why they were

false.  The question of fact is one left for jury determination.  The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.

## XIII.  Sullivan's Motion to Strike

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I.  As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.

## XIV. Jury Instructions for Sullivan

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A).  This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B).  This court refused this paragraph because it does not go to the issue in question.  The government does not allege that Sullivan's statements were literally true, but unresponsive.  The government claims that Sullivan's statements were false.  The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4.  As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994).   That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5.  For the same reasons as No. 4, this instruction was also refused.  This court has no reason to change the decision.  The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood."  Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7.  For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7.  It is not an accurate statement of the law in this forum.

## XV. Slattery's Motion for Judgment of Acquittal

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud.  This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict.  At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference. *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt.  Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise.  There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.

**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires." Rule 33 motions are not favored and are granted in only the most extreme cases. *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied. The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

**<u>Conclusion</u>**

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.

Enter:

/s/David H. Coar

_____

David H. Coar
United States District Judge

Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.  05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court are several post-trial motions.  Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.

## Facts

        A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery.  The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment.  The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment.  The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment.  The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment.  Defendants now bring post-trial motions for judgment of acquittal or new trial.

## Legal Standard

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979).  The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt. *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).

## Analysis

### I. "Personal Gain" Jury Instruction for Honest Services Fraud

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person.  This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate.  There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office.  149 F.3d 654-57. There is no question that personal gain is an important element of §1346.  In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id*. In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.


## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official. We have dealt with this issue extensively prior to trial, and see no

reason to deviate from our previous decision. See *United States v. Sorich*, 427 F. Supp. 2d 820,

831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because,

among other reasons, they are one source of the Defendants' fiduciary duties. The indictment

offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago

Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois

constitution, and the *Shakman* Decrees." *Id*. We find now, as we did then, that the *Shakman*

Decrees are an appropriate basis for evaluating honest service fraud. Defendants claim that the

"City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree

protects registered voters. Because the *Shakman* Decree is not the only basis of fraud, the fact

that the "people of Chicago" may be a broader than "registered voters" does not bar the

consideration of the *Shakman* Decree as one of many sources of consideration. There are, after

all, a significant portion of the "people of Chicago" who are registered voters, and valid

"victims" even according to Sorich. If the *Shakman* Decree were the only source of law,

questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations,

citing a Fifth Circuit case in support. However, the Seventh Circuit has held otherwise. In

*United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not

required to be grounded solely in state law. 195 F.3d 961 (7th Cir. 1999). Federal statutes may

be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes.

*Id*. There is also a strong grounding in this case in state law and state statutes. The *Shakman*

Decree is but one of several bases for fiduciary duty. As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute. State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services. This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation. The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud. Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes. See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree. This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes. The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud. As such, the jury instructions were properly given.

## III. Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled. The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement. The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995). The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality. These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

## IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent." Different circuits have come out differently on this issue. However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341. 427 F.Supp. 2d at 827-28. We find no reason to rehash all the arguments and reasonings again. In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent". *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990). The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006). In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees. The City has authorized individuals to spend its money to hire and promote workers on a merit basis. When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest. In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.


## V. Amendment of the Indictment at Trial

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

**VI. Elements of Mail Fraud**

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received. In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme. 489 U.S. 705 (U.S. 1989). This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme." The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient. These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme. Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring. Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

## VIII. Unfair Advantage from Permitting Second Superseding Indictment

McCarthy reargues its pre-trial motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial. This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two. The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

## IX. Computer Deletion Evidence

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial. This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997. That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot

be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in

the charged scheme to defraud. It cannot be used by you as evidence against Defendant John

Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against

unfair prejudice.


## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes

testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that

because Sullivan did not testify, and there was no opportunity for cross-examination, testimony

beyond Sullivan's false statements should have been barred.  McCarthy argues that because they

were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to

show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471

U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004).  Further, because the

statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if

the statement is in the course and in furtherance of the conspiracy.  Fed. R. of Evid. 801(E),

*United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006).  In the present case, Sullivan was a co-

conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy.

This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation

Clause.

**XI.  Union Instruction**

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process.  As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud.  This is simply not the case. This court rejected Defendant's instructions #28, since the authorities cited did not support their contention.  Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account.  *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005).  The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail.  The question was not whether union officials participated in hiring.  The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited.  This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.


**XII. Sullivan's Motion for Acquittal for Count Eight**

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements.  Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization. Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization. Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding. A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly. Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization. This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false. Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms." Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence. Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan. Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the

organization with Katalinic.  A list tracking hires for one of the mass hire sequence, including

selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside

Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence

presented above is viewed in a light most favorable to the government, a reasonable jury could

find knowing and willful falsity beyond a reasonable doubt.  The evidence, when taken as a

whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization.

The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is

insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of

Agent Hauser constituted a constructive amendment of the indictment. In support of this

contention, Sullivan asserts that there is variation between the language of the indictment

concerning Sullivan's words and the testimony of Agent Hauser.  Specifically, the difference

between "did not have knowledge about" and "have never heard of", and "who the members"

and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact

words of the perjured testimony.  *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989);

*United States v. Ras*, 713 F.2d 311 (7th Cir. 1983).  The fact that an FBI agent's testimony about

the statements varies from the language in the indictment does not amend the indictment.  *United

States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording

between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to." *Id*.

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were." These statements are not "fundamentally ambiguous" and do not command an acquittal. Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment. There is no ambiguity as to his meaning, even if the question may have been interpreted differently. *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements. The jury's verdict stands. The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true. This is simply not the case. Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true." The government has also presented evidence for why they were

false. The question of fact is one left for jury determination. The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.

**XIII. Sullivan's Motion to Strike**

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I. As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.

**XIV. Jury Instructions for Sullivan**

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A). This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B). This court refused this paragraph because it does not go to the issue in question. The government does not allege that Sullivan's statements were literally true, but unresponsive. The government claims that Sullivan's statements were false. The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4. As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994). That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5. For the same reasons as No. 4, this instruction was also refused. This court has no reason to change the decision. The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood." Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7. For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7. It is not an accurate statement of the law in this forum.


## XV. Slattery's Motion for Judgment of Acquittal

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud. This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict. At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference. *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt. Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise. There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.

**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires." Rule 33 motions are not favored and are granted in only the most extreme cases. *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied. The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

## Conclusion

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.


Enter:


/s/David H. Coar

_____

David H. Coar
United States District Judge


Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.  05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court are several post-trial motions.  Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.

## Facts

A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery.  The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment.  The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment.  The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment.  The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment. Defendants now bring post-trial motions for judgment of acquittal or new trial.

## Legal Standard

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979). The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt. *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).

## Analysis

### I. "Personal Gain" Jury Instruction for Honest Services Fraud

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person. This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate. There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office. 149 F.3d 654-57. There is no question that personal gain is an important element of §1346. In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id*. In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.


## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official. We have dealt with this issue extensively prior to trial, and see no reason to deviate from our previous decision. See *United States v. Sorich*, 427 F. Supp. 2d 820, 831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because, among other reasons, they are one source of the Defendants' fiduciary duties. The indictment offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois constitution, and the *Shakman* Decrees." *Id*. We find now, as we did then, that the *Shakman* Decrees are an appropriate basis for evaluating honest service fraud. Defendants claim that the "City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree protects registered voters. Because the *Shakman* Decree is not the only basis of fraud, the fact that the "people of Chicago" may be a broader than "registered voters" does not bar the consideration of the *Shakman* Decree as one of many sources of consideration. There are, after all, a significant portion of the "people of Chicago" who are registered voters, and valid "victims" even according to Sorich. If the *Shakman* Decree were the only source of law, questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations, citing a Fifth Circuit case in support. However, the Seventh Circuit has held otherwise. In *United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not required to be grounded solely in state law. 195 F.3d 961 (7th Cir. 1999). Federal statutes may be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes. *Id*. There is also a strong grounding in this case in state law and state statutes. The *Shakman*

Decree is but one of several bases for fiduciary duty.  As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute.  State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services.  This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation.  The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud.  Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes.  See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree.  This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes. The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud. As such, the jury instructions were properly given.

## III.  Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled. The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement. The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995). The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality. These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

## IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent." Different circuits have come out differently on this issue. However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341. 427 F.Supp. 2d at 827-28. We find no reason to rehash all the arguments and reasonings again. In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent". *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990). The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006). In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees. The City has authorized individuals to spend its money to hire and promote workers on a merit basis. When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest. In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.


## V. Amendment of the Indictment at Trial

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

**VI. Elements of Mail Fraud**

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received.  In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme.  489 U.S. 705 (U.S. 1989).  This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme."  The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient.  These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme.  Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring. Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

## VIII. Unfair Advantage from Permitting Second Superseding Indictment

McCarthy reargues its pre-trail motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial. This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two. The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

## IX. Computer Deletion Evidence

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial. This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997. That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in the charged scheme to defraud. It cannot be used by you as evidence against Defendant John Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against unfair prejudice.

## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that because Sullivan did not testify, and there was no opportunity for cross-examination, testimony beyond Sullivan's false statements should have been barred. McCarthy argues that because they were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471 U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004). Further, because the statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if the statement is in the course and in furtherance of the conspiracy. Fed. R. of Evid. 801(E), *United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006). In the present case, Sullivan was a co-conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy. This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation Clause.

**XI. Union Instruction**

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process. As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud. This is simply not the case. This court rejected Defendant's instructions #28, since the authorities cited did not support their contention. Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account. *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005). The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail. The question was not whether union officials participated in hiring. The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited. This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.

**XII. Sullivan's Motion for Acquittal for Count Eight**

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements. Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that Sullivan "had never heard" of members of the Katalinic's organization. Also, Agent Hauser said that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of the members of Katalinic's organization. Sullivan argues that Agent Hauser's testimony was insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding. A rational jury could certainly have found beyond a reasonable doubt that "who the members are" and "identity of the members" were sufficiently similar to warrant the same meaning, such that Sullivan's statements were the same in substance as those charged in the indictment, even if the language differed slightly. Similarly a rational jury could have found beyond a reasonable doubt that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did not know about Katalinic's political organization. This court finds no reason to overturn the verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was insufficient to establish that the statements in Count Eight were knowingly and willfully false. Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor performers picked by the IGA as "loms." Drumgould testified that he saw color-coded lists in Sullivan's office, and saw him making one of the lists introduced into evidence. Steve Bylina testified that while he usually received the list of preselected names from Drumgould, on one occasion he received them directly from Sullivan. Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the organization with Katalinic. A list tracking hires for one of the mass hire sequence, including selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence presented above is viewed in a light most favorable to the government, a reasonable jury could find knowing and willful falsity beyond a reasonable doubt. The evidence, when taken as a whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization. The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of Agent Hauser constituted a constructive amendment of the indictment. In support of this contention, Sullivan asserts that there is variation between the language of the indictment concerning Sullivan's words and the testimony of Agent Hauser. Specifically, the difference between "did not have knowledge about" and "have never heard of", and "who the members" and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact words of the perjured testimony. *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989); *United States v. Ras*, 713 F.2d 311 (7th Cir. 1983). The fact that an FBI agent's testimony about the statements varies from the language in the indictment does not amend the indictment. *United States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to." *Id.*

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were." These statements are not "fundamentally ambiguous" and do not command an acquittal. Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment. There is no ambiguity as to his meaning, even if the question may have been interpreted differently. *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements. The jury's verdict stands. The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true. This is simply not the case. Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true." The government has also presented evidence for why they were

false.  The question of fact is one left for jury determination.  The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.

**XIII.  Sullivan's Motion to Strike**

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I.  As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.

**XIV. Jury Instructions for Sullivan**

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A).  This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B).  This court refused this paragraph because it does not go to the issue in question.  The government does not allege that Sullivan's statements were literally true, but unresponsive.  The government claims that Sullivan's statements were false.  The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4.  As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994).   That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5.  For the same reasons as No. 4, this instruction was also refused.  This court has no reason to change the decision.  The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood."  Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7.  For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7.  It is not an accurate statement of the law in this forum.


## XV. Slattery's Motion for Judgment of Acquittal

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud.  This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict.  At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference.  *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt.  Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise.  There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.


**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires." Rule 33 motions are not favored and are granted in only the most extreme cases. *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied. The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

## Conclusion

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.

Enter:

/s/David H. Coar

_____

David H. Coar
United States District Judge

Dated: **11/15/06**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 05 CR 644** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **ROBERT SORICH,** | ) | |
| **TIMOTHY McCARTHY,** | ) | |
| **JOHN SULLIVAN,** | ) | |
| **PATRICK SLATTERY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before this Court are several post-trial motions. Defendants Robert Sorich, Timothy McCarthy,

John Sullivan and Patrick Slattery have filed motions for judgments of acquittal or a new trial.

For the reasons stated in this opinion, the motions for acquittal or new trial are DENIED.

### <u>Facts</u>

A jury trial was held for Robert Sorich, Timothy McCarthy, John Sullivan and Patrick

Slattery. The jury found Sorich guilty with respects to Counts 2, 3, 4 and 5 of the Second

Superceding Indictment. The jury found McCarthy guilty with respects to Counts 2 and 5 of the

Second Superceding Indictment. The jury found Sullivan guilty with respect to Count 8 of the

Second Superceding Indictment. The jury found Slattery guilty with respect to Count 6 of the

Second Superceding Indictment.  Defendants now bring post-trial motions for judgment of acquittal or new trial.

## Legal Standard

Under Rule 29, in determining whether a judgment of acquittal is appropriate, the relevant inquiry is whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307 (1979).  The movant's burden is to demonstrate that the evidence cannot support a finding of guilt beyond a reasonable doubt.  *United States v. Rahman,* 34 F.3d 1331 (7th Cir. 1994).

## Analysis

### I. "Personal Gain" Jury Instruction for Honest Services Fraud

Sorich and McCarthy move for a judgment of acquittal on the grounds that jury instructions on 18 U.S.C. §1346 honest services fraud was incorrect because it did not limit personal gain to a member of the scheme, but could also be for any other person.  This matter was taken up in the jury instruction conference, where the instruction was found to be appropriate.  There is no reason to change that decision.

Sorich and McCarthy rely on *United States v. Bloom* which states that the distinction between "run of the mill" violations of fiduciary duty and federal crime is the element of private gain from misuse of office.  149 F.3d 654-57. There is no question that personal gain is an important element of §1346.  In the jury instructions, the element of personal gain was duly

included, where a scheme to defraud required intent "to deprive a governmental entity of the honest services of its employees for personal gain to a member of the scheme or another." Jury Instructions at 27.

The inquiry is whether the scope of "personal gain" requires that the gain be limited to the individual members of the scheme. In *United States v. Spano*, the Seventh Circuit stated:

> A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants, just as a conspirator doesn't have to benefit personally to be guilty of conspiracy--a point so obvious that we can't find a case that states it, although it is implicit in statements of the elements of conspiracy, of which personal benefit is not one. 421 F.3d 599, 603 (7th Cir. 2005).

Further, *Spano* instructs that "In the case of a successful scheme, the public is deprived of its servants' honest services no matter who receives the proceeds." *Id*. In the present case, governmental workers defrauded the public of honest services when defendants manipulated the hiring and promotion process. Like *Spano,* the public was deprived of its servants' honest services, no matter who received the benefit. As such, the jury instructions are proper and within the proper scope of §1346.

Furthermore, the evidence, when construed in a light most favorable to the government, supports that a rational jury could have found that defendants did receive personal gain in the form of job security and advancement in their own careers.


## II. Use of the *Shakman* Decree

Sorich again attacks the use of the *Shakman* Decree, arguing that an honest service case cannot be based on a consent decree, the "people of the City" are not proper victims under the *Shakman* Decree, and that the decree does not arise under state law as required by federal

prosecution of a state official.  We have dealt with this issue extensively prior to trial, and see no

reason to deviate from our previous decision.  See *United States v. Sorich*, 427 F. Supp. 2d 820,

831-34 (D. Ill. 2006).

In our prior decision, this court found that the "*Shakman* Decrees come into play because,

among other reasons, they are one source of the Defendants' fiduciary duties.  The indictment

offers a variety of sources to illustrate the scope of Defendants' duties, including the Chicago

Governmental Ethics Ordinances, the Chicago municipal code, the Illinois code, the Illinois

constitution, and the *Shakman* Decrees."  *Id*.  We find now, as we did then, that the *Shakman*

Decrees are an appropriate basis for evaluating honest service fraud.  Defendants claim that the

"City of Chicago" is not an appropriate victim of a *Shakman* Decree violation, since the Decree

protects registered voters.  Because the *Shakman* Decree is not the only basis of fraud, the fact

that the "people of Chicago" may be a broader than "registered voters" does not bar the

consideration of the *Shakman* Decree as one of many sources of consideration.  There are, after

all, a significant portion of the "people of Chicago" who are registered voters, and valid

"victims" even according to Sorich.  If the *Shakman* Decree were the only source of law,

questioning the scope of the victim class might be appropriate.

Sorich argues that the court can look only to state law to define mail fraud violations,

citing a Fifth Circuit case in support.  However, the Seventh Circuit has held otherwise.  In

*United States v. Martin*, the Seventh Circuit upheld that federal mail fraud statutes are not

required to be grounded solely in state law.  195 F.3d 961 (7th Cir. 1999).  Federal statutes may

be used to help in narrowing the interpretation of the broad, and often vague, mail fraud statutes.

*Id*.  There is also a strong grounding in this case in state law and state statutes.  The *Shakman*

Decree is but one of several bases for fiduciary duty. As such, the jury instructions regarding the *Shakman* Decrees were proper, and do not warrant the granting of a judgment of acquittal.

Alternatively, McCarthy asserts that defining honest services on the basis of state law violations was contrary to the mail fraud statute. State law, as we addressed in 427 F.3d at 834-37, is a proper basis for defining honest services. This position is supported by *United States v. Warner*, where it was held that "the Seventh Circuit does not mandate that a fiduciary duty of honest services be defined only in reference to state law; however, the Seventh Circuit does not appear to prohibit any consideration of state law in determining the nature of the duty." 2006 U.S. Dist. LEXIS 64085 (D. Ill. 2006).

McCarthy further argues that Count Five should be dismissed because the mailing charged in Count Five was not a *Shakman* violation. This misconstrues the issue. The government does not allege that Count Five contained a *Shakman* violation. The *Shakman* Decree, as explained above, is simply one, out of many, aids in narrowing and defining honest service in mail fraud. Further, McCarthy claims that because The 2004 Building Inspector Hiring was a different process than the Political Hiring, this constitutes different schemes. Although there were two hiring processes, the people and mechanisms in place were the same. Having more than one group of favored candidates in the described scheme does not mean there are multiple schemes. See *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997), *United States v. Zeidman*, 540 F.2d 314 (7th Cir. 1976), *United States v. Stout*, 965 F.2d 340 (7th Cir. 1992).

Finally, McCarthy argues that the jury instructions were flawed in that it did not instruct the jury that Defendants had to have knowledge of the job candidate's political affiliation in order to violate the *Shakman* Decree. This is a misplaced argument, as the charged offense is not

violation of the *Shakman* Decree, but violation of the mail fraud statutes. The mail fraud statutes have no requirement for knowledge of job candidates' political affiliation, but only knowledge of the scheme to defraud. As such, the jury instructions were properly given.

## III. Constitutionality

Sorich and McCarthy repeat the arguments made in pretrial motions on the unconstitutionality of §1346, in which this court has already ruled. The Defendants are directed to this court's earlier decision at 427 F.3d at 835-37, where we found that there was fair notice to trigger the mail fraud statue, and that enforcement of the statute does not constitute arbitrary enforcement. The use and application of §1346 is constitutional for government hiring fraud. 427 F.3d at 835-37; see also *United States v. Dvorak*, 115 F.3d 1339 (7th Cir. 1997); *United States v. Hogan*, 54 F.3d 336 (7th Cir. 1995). The arguments and reasonings in the prior decision still stand.

Sorich tries to reassert his *Shakman* Decree and "personal gains" arguments, in an effort to argue for unconstitutionality. These claims and arguments have already been addressed above, and were also taken into account in our pre-trial decision.

## IV. Money and Property

Sorich and McCarthy reassert the argument that the government failed to prove that the scheme sought to defraud the city of Chicago or the people of the city of "money" or "property." At issue is whether "money" and "property" includes the "property right to control how money spent." Different circuits have come out differently on this issue. However, as discussed in the

decision on the motions to dismiss the indictment, the "property right to control how money is spent" qualifies as "property" under 18 U.S.C. 1341. 427 F.Supp. 2d at 827-28. We find no reason to rehash all the arguments and reasonings again. In our prior decision, we relied predominantly on *United States v. Duff* and *United States v. Granberry*, as cases that have recognized the "property right to control how money is spent". *United States v. Duff*, 336 F. Supp. 2d 852 (D. Ill. 2004), *United States v. Granberry,* 908 F.2d 278 (8th Cir. 1990). The conviction of Duff was affirmed in *United States v. Leahy*, 464 F.3d 773 (7th Cir. 2006). In *Leahy*, the Seventh Circuit held that the City of Chicago's right to purchase services from contractors was properly considered "property" or "money" under the mail fraud statutes. Although the City did not "lose" money, in that it would have had to pay for contracting services in any case, the fact that false pretenses limited the City's control over where to spend its money (i.e. which contractors to hire) was considered sufficient to satisfy the mail fraud statute. Similarly, in the present case, by limiting the City's employee options through false pretenses, Defendants have defrauded the City of its full right to control how its money is spent on its employees. The City has authorized individuals to spend its money to hire and promote workers on a merit basis. When these individuals defraud the City of these meritorious employees, and instead hire and promote based on other criteria, the City suffers a loss in its money interest. In accordance with the Seventh Circuit holding, the "property right to control how money is spent" is proper under §1341.

**V. Amendment of the Indictment at Trial**

Sorich and McCarthy assert that the government failed to confine its argument and proof to the victims charged in the indictment by portraying disappointed job seekers as victims instead of the "people of the City of Chicago, and the City." This, Sorich and McCarthy argue, changed a key element of the charges during trial, and thus a judgment of acquittal is proper.

A court must ensure that a defendant is tried solely on charges that were contained in the indictment brought against him. *Stirone v. United States*, 361 U.S. 212 (U.S. 1960). Sorich and McCarthy claim that the government improperly amended the charges by inviting the jury to find that Defendants defrauded specific job applicants, despite the absence of such allegations in the indictment, thus broadening the basis for conviction. We disagree.

In order to prove their case, the government must show that the scheme affected the normal hiring process, which involves describing the disappointed job-seekers, the qualification of the individual applicants and job winners. Simply describing and comparing the disappointed job-seekers with the job winners does not amend the indictment.

The fact that additional job-seekers were introduced during trial does not change an essential element of the mail fraud offense. See *United States v. Henningsen*, 387 F.3d 585 (7th Cir. 2004) ("The crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim."). The introduction into evidence of the disappointed job-seekers is not the same as claiming that they are the victims, and such a claim was not advanced in trial. As such, there is no amendment of the charges to warrant a judgment of acquittal.

**VI. Elements of Mail Fraud**

McCarthy argues that the government failed to prove mailings beyond a reasonable doubt, because there was lack of evidence as to when the fraudulent letters were actually sent and received.  In *Schmuck v. United States*, the Supreme Court found that the mailing element is satisfied only if the mailing was "in furtherance" of the fraudulent scheme.  489 U.S. 705 (U.S. 1989).  This court modified the jury instructions to reflect this requirement: "If you find that a mailing incidental to the scheme occurred after the desired result of the scheme was obtained, you must find that the mailing was not in furtherance or incidental to the scheme."  The jury was properly instructed, and based on the evidence presented regarding the dates of the mailing, decided that the proof was sufficient.  These fact determinations are precisely the duty of the jury. We find that a reasonable jury could have reached this verdict, and decline to enter a judgment of acquittal on these grounds.

## VII. McCarthy's Knowledge of the Scheme

McCarthy moves for judgment of acquittal on the grounds that the government failed to establish beyond a reasonable doubt that McCarthy knowingly participated in the scheme. McCarthy argues that the government has provided no direct testimony or evidence the McCarthy knew that the Personnel Directors or Interviewers were falsifying the interview forms, rating sheets or other hiring documents.

In order to grant a judgment of acquittal, the evidence presented must be insufficient for a jury to conclude beyond a reasonable doubt that McCarthy had knowledge of the fraudulent scheme.  Although direct evidence is lacking, the government is correct in observing that there was sufficient circumstantial evidence that a rational jury could have reached a guilty verdict.

The circumstance evidence includes: (1) testimony that McCarthy gave Michael Sheahan, then employee of the Department of Aviation, names to screen, (2) McCarthy's signature on the *Shakman*-certifications, stating that no political hiring had occurred, (3) McCarthy's instructions to Falcon to destroy a list of referred names, and (4) McCarthy's concealment from the Corporate Counsel, Mara Georges, of his role in *Shakman*-covered hiring. Reviewing these facts in a light most favorable to the government, we find that a reasonable jury could have found knowledge beyond a reasonable doubt.

## VIII. Unfair Advantage from Permitting Second Superseding Indictment

McCarthy reargues its pre-trail motion that permitting the Second Superseding Indictment on the eve of trial gave the government an unfair advantage at trial. This court has already denied this argument, and finds no reason to change that decision. McCarthy had received discovery of the hiring sequence, and changing the overt act alleged in the count did nothing to change the scheme to defraud charged in Count Two. The change did not prejudice McCarthy's case, and does not warrant a judgment of acquittal.

## IX. Computer Deletion Evidence

McCarthy argues that the computer deletion evidence was highly prejudicial to himself, Slattery and Sullivan, and thus they were denied a fair trial. This court has addressed Defendants' arguments for prejudice by giving a limiting instruction to the jury as follows: "You have heard evidence of the alleged destruction of computer records in 1997. That evidence is admitted against Defendants McCarthy and Slattery only for the limited purpose of assisting you

in deciding whether the charged schemes to defraud existed or its nature and objective. It cannot

be used by you in deciding whether Defendants McCarthy and Slattery joined or participated in

the charged scheme to defraud. It cannot be used by you as evidence against Defendant John

Sullivan for any purpose." These instructions are sufficiently clear to direct the jury against

unfair prejudice.


## X. Hearsay by Sullivan

McCarthy argues that Agent Hauser's testimony about Sullivan's statements constitutes

testimonial hearsay in violation of the Confrontation Clause. McCarthy further argues that

because Sullivan did not testify, and there was no opportunity for cross-examination, testimony

beyond Sullivan's false statements should have been barred.  McCarthy argues that because they

were let in, the jury was led to improperly infer McCarthy's guilt.

Sullivan's statements were not offered for the truth of the matter stated, but rather to

show untruthfulness. This does not trigger the Confrontational Clause. *Tennessee v. Street*, 471

U.S. 409 (U.S. 1985); *Crawford v. Washington*, 541 U.S. 36 (U.S. 2004).  Further, because the

statement was made by Sullivan, a co-conspirator, even if it is untruthful, it can be admitted if

the statement is in the course and in furtherance of the conspiracy.  Fed. R. of Evid. 801(E),

*United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006).  In the present case, Sullivan was a co-

conspirator offering statements in furtherance of the conspiracy that arguably harmed McCarthy.

This statement from a co-conspirator is not hearsay, and is not barred by the Confrontation

Clause.

**XI. Union Instruction**

McCarthy moves for a judgment of acquittal on the grounds that the jury instructions did not properly instruct the jury that union officials have a legitimate role in the hiring process. As a result, McCarthy argues that the jury was led to believe that any outside influence on the hiring process was improper and could be used to establish mail fraud. This is simply not the case. This court rejected Defendant's instructions #28, since the authorities cited did not support their contention. Further, this court gave Jury Instruction 33 that "not all actions by…union representatives with respect to a particular job candidate are prohibited by the *Shakman* decree," which instructed the jury as to the union's potential legitimate involvement.

The Seventh Circuit has stated that when reviewing jury instructions, the context of the trial as a whole must be taken into account. *United States v. Chavis*, 429 F.3d 662 (7th Cir. 2005). The question at issue during trial was whether McCarthy and other defendants falsified documents and fraudulently hired the relatives of union officials while using the mail. The question was not whether union officials participated in hiring. The jury instructions made this clear, and further noted that not all actions by union representatives were prohibited. This addresses McCarthy's concerns, and in the context of the whole trial, the jury instructions were proper.

**XII. Sullivan's Motion for Acquittal for Count Eight**

Sullivan argues that the evidence was insufficient to establish that John Sullivan made either of the statements charged in count eight, due to interpretations of Agent Hauser's statements. Specifically, Sullivan alleges that Agent Hauser said that Sullivan said he did not

"have any knowledge about" Katalinic's political organization, where as Count Eight states that

Sullivan "had never heard" of members of the Katalinic's organization. Also, Agent Hauser said

that Sullivan said he did not know "who the members" of Mr. Katalinic's organization were. In

contrast to Count Eight, which charged that Sullivan stated that he did not know "the identity" of

the members of Katalinic's organization. Sullivan argues that Agent Hauser's testimony was

insufficient to show that John Sullivan made the statements as charged.

In reviewing the statements, there is no reason to overturn the jury's finding. A rational

jury could certainly have found beyond a reasonable doubt that "who the members are" and

"identity of the members" were sufficiently similar to warrant the same meaning, such that

Sullivan's statements were the same in substance as those charged in the indictment, even if the

language differed slightly. Similarly a rational jury could have found beyond a reasonable doubt

that "did not have knowledge" and "have never heard of" both mean that Sullivan claimed he did

not know about Katalinic's political organization. This court finds no reason to overturn the

verdict.

Sullivan moves for judgment of acquittal on the grounds that the evidence was

insufficient to establish that the statements in Count Eight were knowingly and willfully false.

Drumgould testified that he regularly reported to Sullivan the names of persons to be hired that

were given him and Slattery by Sorich, and that Sullivan would sometimes criticize poor

performers picked by the IGA as "loms." Drumgould testified that he saw color-coded lists in

Sullivan's office, and saw him making one of the lists introduced into evidence. Steve Bylina

testified that while he usually received the list of preselected names from Drumgould, on one

occasion he received them directly from Sullivan. Pat Foy, a close friend of Sullivan's and a

member of Katalinic's political organization, testified that he discussed certain members of the

organization with Katalinic. A list tracking hires for one of the mass hire sequence, including

selections by Katalinic McCarthy, Al Sanchez, and unions, was found in a cabinet just outside

Sullivan's office.

Sullivan, of course, disagrees with the import of these facts. However, when the evidence

presented above is viewed in a light most favorable to the government, a reasonable jury could

find knowing and willful falsity beyond a reasonable doubt. The evidence, when taken as a

whole, suggests that Sullivan in fact did have knowledge of Katalinic's political organization.

The fact that Sullivan may disagree with the jury's conclusion does not mean that the evidence is

insufficient.

Sullivan next argues that a judgment of acquittal is required because the testimony of

Agent Hauser constituted a constructive amendment of the indictment. In support of this

contention, Sullivan asserts that there is variation between the language of the indictment

concerning Sullivan's words and the testimony of Agent Hauser. Specifically, the difference

between "did not have knowledge about" and "have never heard of", and "who the members"

and "the identity of" Katalinic's political organization.

The law does not require that a perjury indictment or information reiterate the exact

words of the perjured testimony. *United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir. 1989);

*United States v. Ras*, 713 F.2d 311 (7th Cir. 1983). The fact that an FBI agent's testimony about

the statements varies from the language in the indictment does not amend the indictment. *United

States v. Cherif*, 943 F.2d 692, 700 (7th Cir. 1991). In this case, a slight difference in wording

between Agent Hauser's testimony of Sullivan's words and the language of the indictment is not

sufficient to constitute an amendment of the indictment, and does not warrant a judgment of acquittal.

Sullivan argues ambiguity at two points. First, he claims that the statements charged in Count Eight were fundamentally ambiguous, and requires an entry of a judgment of acquittal. Specifically, Sullivan claims that the term "preferential treatment" and having "heard of" were not defined in Statement A of Count Eight. As for Statement B, Sullivan claims there is ambiguity in whether "members" refers to all or any of the members of Katalinic's organization. Second, Sullivan cites *Bronston v. United States*, 409 U.S. 352 (1973) in alleging that the questioning of Sullivan by Agent Hauser and Sullivan's answer statements were fundamentally ambiguous, as terms were not defined, and the scope was too broad.

As to the ambiguity of questions and answers during the interview with Agent Hauser, the *Bronston* rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004). This "indisputable" answer is different than an ambiguous answer, as alleged by Sullivan. Sullivan argues that his questioning and answers were fundamentally ambiguous. In this case, "a fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction…A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations…A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understand of its meaning." *Id*. The existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction of perjury. *Id*. If the answered statement is not fundamentally ambiguous, then the context of the question and other extrinsic evidence

should be taken into account by the fact finder, and "the fact finder decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to." *Id*.

Sullivan's statements in answer to Agent Hauser's questions include that he "didn't have knowledge about members of Katalinic's political organization getting preferential treatment" and that he "didn't know who the members of Mr. Katalinic's organization were." These statements are not "fundamentally ambiguous" and do not command an acquittal. Sullivan's answer that he "didn't have knowledge of" and "didn't know who" clearly conveys the substantive idea that he denies knowing the identity of the members of Katalinic's political organization, and denies knowing about their preferential treatment. There is no ambiguity as to his meaning, even if the question may have been interpreted differently. *United States v. Camper*, 384 F.3d 1073, 1078 (9th Cir. 2004)( "Even when a question has two plausible meanings, where the evidence proves that the defendant understood one such meaning and answered falsely to it, a jury can convict for false statement."); *see also United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003). Absent a fundamental ambiguity, it is then left for the jury to decide whether these match up with the evidence presented, or whether these are false statements. The jury's verdict stands. The question as to sufficiency of evidence has already been addressed above.

Sullivan moves for a judgment of acquittal on the grounds that the statements charged in Count Eight are literally true. This is simply not the case. Sullivan makes arguments for why they could be true, but the fact that Sullivan has arguments for why the statements are true, does not make them "literally true." The government has also presented evidence for why they were

-16-

false.  The question of fact is one left for jury determination.  The jury granted a verdict for the government, and as we have discussed above, there was sufficient evidence for a rational jury to find for the government beyond a reasonable doubt on this issue.


**XIII.  Sullivan's Motion to Strike**

Sullivan asks for reconsideration of its motion to strike evidence that was admitted as to Count I.  As we have previously discussed, while Sullivan was acquitted on Count I, the evidence of Sullivan's knowledge and participation in the fraudulent scheme was relevant for providing motive for his false statements to the FBI.


**XIV. Jury Instructions for Sullivan**

Sullivan asserts that the court erred in refusing to give the second paragraph of jury instruction No. 3(A).  This court refused this paragraph because it was redundant, as the Court's instruction adequately instructed the jury that a statement had to be false and willful, and gave a good faith instruction.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 3(B).  This court refused this paragraph because it does not go to the issue in question.  The government does not allege that Sullivan's statements were literally true, but unresponsive.  The government claims that Sullivan's statements were false.  The jury instructions properly reflects this theory.

Sullivan asserts that the court erred in refusing to give jury Instruction No. 4.  As this court explained when refusing this instruction, the only authority cited by Sullivan is a Tenth Circuit case, *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994).   That case is

inconsistent with *United States v. Camper,* 384 F.3d 1073 (9th Cir. 2004) and *United States v. Weatherspoon*, 581 F.2d 595, 600-01 (7th Cir. 1978).

Sullivan asserts that the court erred in refusing to give jury Instruction No. 5.  For the same reasons as No. 4, this instruction was also refused.  This court has no reason to change the decision.  The jury was instructed, regarding ambiguity, that "the context of the question and answer is often of critical importance if it is claimed that the question was ambiguous or misunderstood."  Jury Instruction at 47.

Sullivan asserts that the court erred in refusing to give Instruction No. 6 and No. 7.  For the same reasons for refusing Instruction No. 4, this court refused Instructions No. 6 and No. 7.  It is not an accurate statement of the law in this forum.


## XV. Slattery's Motion for Judgment of Acquittal

Slattery moves for entry of a judgment of acquittal of Count Six on the grounds that there was insufficient evidence to establish Slattery's knowledge and intent to defraud.  This court will only overturn a jury verdict in the most extreme cases: where the evidence preponderates heavily against the verdict.  At the same time, this court is well aware that a conviction cannot rest on mere speculation or conjecture, or inference upon inference.  *United States v. Moore,* 115 F.3d 1348, 1364 (7th Cir. 1997); *United States v. Pinkney*, 85 F.3d 4, 7 (2nd Cir. 1996).

There is sufficient evidence for a rational jury to convict Slattery on Count Six beyond a reasonable doubt.  Although Slattery continues to present arguments for why the evidence suggests that he did not have knowledge or intent to defraud, the evidence itself can reasonable lead a rational jury to conclude otherwise.  There was testimony that Slattery accompanied

Drumgould to his meetings with Sorich in which the pre-selected candidates were discussed, that Slattery himself transmitted names from Sorich to Drumgould for promotion, that Slattery called Drumgould, when he was no longer a City employee, to come back to fill out forms, that Slattery talked to Katalinic about Katalinic's job requests for his political workers, and that he complained to Katalinic that his own political workers were not getting enough jobs. Conversations with Hennessy provide further circumstantial evidence. These individual pieces of evidence build a case of circumstantial evidence that can lead a rational jury to convict beyond a reasonable doubt.

Slattery argues that this is a case of "speculation" or "inference upon inference," because there is no direct evidence of Slattery's knowledge or intent. However, the lack of direct evidence does not mean the facts are automatically "speculation." When the facts are such that a jury can make reasonable inferences about the knowledge and intent of Slattery, this circumstantial evidence is sufficient for a jury finding. Further, the fact that there are several pieces of circumstantial evidence does not mean there is "inference upon inference." Inference upon inference refers to one inference building on another inference. This is different than several different facts leading the jury to draw a reasonable inference. The Seventh Circuit has granted that "proof of intent to defraud is often proven through circumstantial evidence or inference drawn from the scheme itself." *United States v. Henningsen,* 387 F.3d 585, 591 (7th Cir. 2004). Thus, judgment of acquittal is denied.

**XVI. New Trial**

A motion for a new trial, pursuant to Rule 33 of the Fed. R. Of Crim. Procedure is granted only "if the interest of justice so requires." Rule 33 motions are not favored and are granted in only the most extreme cases. *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998). New trials are appropriate when "trial errors or omissions have jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). For the same reasons that this court denies entering judgment of acquittal, the motions for new trial are also denied. The claims and allegations presented by the Defendants simply do not rise to the level of injustice as to require a new trial.

**Conclusion**

For the foregoing reasons, Defendants' motions for acquittal or new trial are DENIED.

Enter:

/s/David H. Coar

_____

David H. Coar
United States District Judge

Dated: **11/15/06**